NICHOLAS WREGLESWORTH, By His Mother and Legal Guardian, Barbara Wreglesworth, *et al.*, Plaintiffs-Appellees, v. ARCTCO, INC. d/b/a Tigershark Watercraft, n/k/a Arctic Cat, Inc., *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—99—2662

Opinion filed September 29, 2000.

James Conte, of Lee, Mann, Smith, McWilliams, Sweeney & Ohlson, of Chicago, and Scott Olds, of James E. Olds, Ltd., of Grangeville, Idaho, for appellants.

Michael Svanascini, of Kedzie & Svanascini, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Defendants Arctic Cat, Inc., and Arctco Sales, Inc. (hereinafter referred to collectively as the Arctco defendants), appeal from an order of the trial court dismissing their counterclaim for indemnity against plaintiffs Nicholas Wreglesworth (Nicholas), a minor, by his mother and legal guardian, Barbara Wreglesworth, and Barbara Wreglesworth, individually (Barbara). Plaintiffs' lawsuit against Arctco arose from a 1995 accident in which Nicholas was injured while riding as a pas-

senger in a Tigershark personal watercraft in Indiana. Arctco filed a counterclaim for indemnity based on a release and indemnity agreement executed by Barbara. In dismissing the counterclaim, a ruling which was made appealable pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the trial court concluded that defendants were barred from enforcing the release provision. Arctco argues on appeal that the trial court erred in applying Illinois law to the release, adding that if the court had correctly applied Indiana law, Arctco would have been released from liability and indemnified for future liability for the accident. For the reasons set forth below, we affirm the trial court's decision dismissing defendants' counterclaim.

## BACKGROUND

According to plaintiffs' complaint, the accident occurred on July 22, 1995, while Nicholas and his father, James Wreglesworth, both Illinois residents, were vacationing at Cedar Lake, Indiana, with other Illinois residents, including Vera Ortega. Nicholas sustained severe and permanent injuries on that date when the Tigershark personal watercraft in which he was riding as a passenger collided with a pier. At the time of the collision, Vera Ortega was driving the watercraft, which was manufactured by defendants and owned by Timothy Lawrence, an Indiana resident. In their three-count complaint, filed July 21, 1997, Nicholas and Barbara allege negligence, product liability and breach of warranty against defendants based on a number of factors, including that the watercraft could not be steered unless it was under acceleration and that it was difficult to control and maneuver at high speeds.

Defendants subsequently filed a counterclaim for indemnity against plaintiffs, based on a parents' release and indemnity agreement executed by Barbara on August 16, 1997, in Illinois. That agreement, a copy of which was attached to the counterclaim, released Timothy Lawrence, Vera Ortega and the Allstate insurance company (Lawrence's insurer) from liability arising from the accident, in exchange for a payment of $100,000 (the limit of Lawrence's Allstate policy). The agreement also purported to release "any other person, firm or corporation charged or chargeable with responsibility or liability" in connection with the July 22, 1995, accident. Similar language in the agreement's indemnification provision purported to require the repayment of "any additional sum of money that any of [the releasees] may hereafter be compelled to pay on account of the injuries to said minor because of the said accident."

Plaintiffs filed a section 2—619 of the Code of Civil Procedure motion (735 ILCS 5/2—619 (West 1992)) to dismiss the counterclaim, as-

serting that the release applied only to the joint tortfeasors specifically identified in it (Timothy Lawrence and Vera Ortega) and not to defendants. Plaintiffs alleged in their motion that they had settled with Lawrence and Ortega as to Nicholas' cause of action, pursuant to which the foregoing release and indemnity agreement had been entered into. Attached to plaintiffs' motion are copies of their petition in probate to settle this matter, which involved the minor's estate, and the probate court's order approving the settlement. The petition states that "[t]he minor has a cause of action against [the] Estate of Vera Ortega, deceased,[1] and Timothy Lawrence for injury to the minor on July 22, 1995," and that "[a] settlement of $100,000, policy [l]imit" had been offered and Barbara recommended that it be accepted. In its September 2, 1997, order, the probate court ordered that "[t]he cause of action be settled for $100,000 and, upon receiving that sum, the guardian execute and deliver to the party against whom the cause of action lies a release and discharge from all liability *** on account of the injuries." The court also approved the distribution of the proceeds as stated in the petition. As noted, although the probate court directed that the release be granted prospectively, the release and indemnity agreement had already been entered into the previous month, on August 16, 1997, but not submitted to the probate court for approval.

Following a hearing on June 24, 1999, the trial court granted plaintiffs' motion to dismiss the counterclaim, concluding that the probate court neither looked at the release nor interpreted it, nor did the probate court consider anything beyond "what was presented," *i.e.*, a settlement as to the two parties identified in the petition. The trial court also held that it was Illinois and not Indiana law that applied. In July 1999 the court added Rule 304(a) language making the June 24 order appealable.

## DISCUSSION

We first consider plaintiffs' contention that no settlement with defendants was ever approved by the probate court and, therefore, that nothing in the release purporting to discharge defendants from liability as to the minor's claims could be valid. We agree with that contention.

■ Under Illinois law, a minor is a ward of the court when he is involved in litigation, and the court has a duty and broad discretion to protect the minor's interests. See *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563, 570-71, 652 N.E.2d 1051, 1056 (1995); *Burton v. Estrada*, 149 Ill. App. 3d 965, 976, 501 N.E.2d 254, 262

---

[1]Vera Ortega died as a result of the accident.

(1986). That duty to protect is reflected in section 19—8 of the Probate Act of 1975 (Probate Act), which requires that the court approve or reject any settlement agreement proposed on behalf of a minor. See *Ott*, 273 Ill. App. 3d at 571, 652 N.E.2d at 1056; 755 ILCS 5/19—8 (West 1992) ("By leave of court *** a representative may compound or compromise any claim or any interest of the ward *** in any personal estate *** upon such terms as the court directs"). Thus neither a guardian nor a next friend can effectuate settlement of a minor's suit without court approval. *Ott*, 273 Ill. App. 3d at 571, 652 N.E.2d at 1057. "Similarly, a parent has no legal right, by virtue of the parental relationship, to settle a minor's cause of action, and court review and approval of a settlement reached by a parent also is mandatory." *Ott*, 273 Ill. App. 3d at 571, 652 N.E.2d at 1057.

The rules of the circuit court of Cook County contain a similar requirement. Rule 12.15 provides:

"(b) If no proceeding is pending before another Division or another court for a recovery on a cause of action for personal injury or for wrongful death, the role of the Probate Division shall be as provided in this subparagraph.

(i) To settle a cause of action for personal injury to a minor or disabled person, the guardian of the estate of the ward shall file in the [Probate Division] a petition for approval of the settlement of the cause of action." Cook Co. Cir. Ct. R. 12.15(b)(i) (eff. September 3, 1996).

Thus, under Rule 12.15, in order to settle a minor's suit for personal injury the guardian must file a petition for approval with the probate court.

■ In the instant case, the only settlement that was approved by the probate court was the agreement reflected in plaintiffs' petition to settle and in the September 2, 1997, order approving that settlement. As noted, the petition stated that there was a cause of action against Timothy Lawrence and the estate of Vera Ortega arising from Nicholas' injuries in the July 22, 1995, accident, and the petition recommended acceptance of a $100,000 settlement. The September 2 order approved the settlement as presented in the petition and directed the guardian to "execute and deliver to *the party against whom the cause of action lies* a release and discharge from all liability *** on account of the injuries." (Emphasis added.) According to the petition, the parties against whom the cause of action lay were Timothy Lawrence and the estate of Vera Ortega. There is no mention of the Arctco defendants in either the petition or the order.

Therefore, if the release operated as a settlement with the Arctco defendants, it was without court approval. We have found no Illinois

case that deals directly with the effect of such a settlement, but courts in jurisdictions with statutory provisions similar to Illinois's have held that, absent court approval, any settlement of a minor's suit is of no legal effect. In *Scruton v. Korean Air Lines Co.*, 39 Cal. App. 4th 1596, 1605-09, 46 Cal. Rptr. 2d 638, 641-43 (1995), the California Court of Appeals construed section 372 of the California Code of Civil Procedure (Cal. Cir. Code § 372 (Deering 1991)) and held that, without court approval, a proposed compromise of a minor's claim could not be valid or binding. The court noted that contracts of minors are voidable, adding that such a proposed compromise "is always voidable at the election of the minor *** unless and until 'the court's imprimatur has been placed on it.' " *Scruton*, 39 Cal. App. 4th at 1605, 46 Cal. Rptr. 2d at 643. See also *Daigle v. Clemco Industries*, 593 So. 2d 1282, 1288 (La. App. 1991), *aff'd*, 613 So. 2d 619 (La. 1993) (construing similar Louisiana statute and holding that "[a] minor's rights may not be relinquished except pursuant to specific authorization from a court of competent jurisdiction, and any compromise entered into without court approval is of no legal effect").

We find these holdings persuasive, particularly since they are predicated upon statutes similar to Illinois's section 19—8. Accordingly, we hold that any settlement of a minor's claim is unenforceable unless and until there has been approval by the probate court. Thus, under Illinois law, the August 16, 1997, release is unenforceable by the Arctco defendants with regard to Nicholas' claims.

The same is true under Indiana law. In *Danes v. Automobile Underwriters, Inc.*, 307 N.E.2d 902, 906 (Ind. App. 1974), the court construed Indiana's minor's compromise statute and held that "[t]he enforceability of the compromise [of a minor's suit] or a release accompanying it is suspended *** until the settlement is approved by a court of competent jurisdiction." (Emphasis omitted.) The court explained that such an agreement is voidable "pending court approval." 307 N.E.2d at 906.

Because Indiana and Illinois law are essentially the same on this point, there is no need to apply a choice-of-law analysis. See *Malatesta v. Mitsubishi Aircraft International, Inc.*, 275 Ill. App. 3d 370, 374, 655 N.E.2d 1093, 1096 (1995) (before applying choice-of-law analysis, court must determine whether there is a conflict in the laws of the two states; such a conflict exists if the difference in laws would result in a difference in outcome). Under either state's law the outcome would be the same: because there was no court approval, the release is unenforceable as a settlement regarding Nicholas' claims against the Arctco defendants.

Further, in the instant case, regardless of which state's law were

to apply, it is the Illinois probate court to which the parties must turn since Illinois is the forum state. As noted, the rules of the circuit court of Cook County require that any settlement of a minor's claim for personal injury be submitted to the probate court for approval. See Cook Co. Cir. Ct. R. 12.15(b)(i) (eff. September 3, 1996). According to the Restatement (Second) of Conflict of Laws, it is the local law of the forum that controls in such matters. See Restatement (Second) of Conflict of Laws § 123 ("The local law of the forum determines which of its courts, if any, may entertain an action on a claim involving foreign elements"), § 123, Comment a, at 353 ("[I]t is for each state to decide whether an action on a given claim shall be brought in a court of law, of equity, of probate or of admiralty") (1971). The applicability of Rule 12.15 here is not disputed.

Notwithstanding the foregoing, defendants argue that the August 16, 1997, release was not considered by the probate court and thus was not part of the September 2, 1997, settlement. According to defendants, the release apparently was something less than a settlement and did not require probate court approval to be enforceable. We disagree.

Black's Law Dictionary defines "settlement" as "[a]n agreement ending a dispute or lawsuit," and "full settlement" as "[a] settlement and release of all pending claims between the parties." Black's Law Dictionary 1377 (7th ed. 1999). In the instant case there is no question that at the time of the August 16, 1997, release, there was a dispute between plaintiffs and the Arctco defendants. Indeed, as is shown by the July 21, 1997, filing date of plaintiffs' complaint, the action here was already on file with the court. Therefore, if the release had discharged the Arctco defendants as they claim, it would have ended the dispute and resultant lawsuit against them and thus would have been a settlement. As indicated, the release is unenforceable as a settlement of Nicholas' claims because there was no approval by the probate court.

Our analysis does not end there, however. Because the law requiring court approval of settlements applies only to minors, we are left with the question of whether the August 16, 1997, release is enforceable by defendants as to Barbara's claims as an individual. To answer that question, we must look beyond the law governing minors' settlements and examine Illinois's and Indiana's rules regarding the effect of general releases.

■ Under section 2(c) of the Illinois Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/2(c) (West 1992)), in order for a release to discharge tortfeasors other than those who bargained for the release, the other tortfeasors must be specifically identified in the document.

See *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill. 2d 196, 201, 461 N.E.2d 361, 364 (1984); *Trexler v. Chrysler Corp.*, 104 Ill. 2d 26, 29, 470 N.E.2d 300, 302 (1984). Section 2(c) of the Act provides that a release "does not discharge any of the other tortfeasors from liability *** *unless its terms so provide*" (emphasis added) (740 ILCS 100/2(c) (West 1992)), and our supreme court has construed the emphasized language to mean that other tortfeasors are not discharged from liability unless they are "designated by name or otherwise specifically identified" (*Alsup*, 101 Ill. 2d at 201, 461 N.E.2d at 364). In the instant case, the Arctco defendants were not specifically identified in the document, and the release thus is unenforceable by defendants under *Alsup*. The Arctco defendants do not attempt to distinguish *Alsup*, but argue instead that the law as stated in that decision should be modified. We of course cannot do that. We are bound by the principle of *stare decisis* and must adhere to the decisions of our supreme court.

Defendants attempt to avoid the application of the *Alsup* decision by arguing on appeal that it is not Illinois but rather Indiana law that applies. We disagree.

■ As shall be more comprehensively discussed later in this opinion, there can be no question that Indiana applies an intent-of-the-parties rule under which a release is interpreted in the same manner as any other contract, with the parties' intentions as to the purpose of the document controlling. *Huffman v. Monroe County Community School Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992). Indiana previously operated under the common law rule that a release of one joint tortfeasor was a release of all. See *Smith v. Hansen*, 582 N.E.2d 446, 448 (Ind. App. 1991). While the *Hansen* case, which predated *Huffman*, held that the common law rule was still intact, that rule has been superseded and is now an intent-of-the-parties rule. See *Huffman*, 588 N.E.2d at 1267. Thus under Indiana law, "[a] release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well." *Huffman*, 588 N.E.2d at 1267; *Dobson v. Citizens Gas & Coke Utility*, 634 N.E.2d 1343, 1345 (Ind. App. 1994).

Thus under current Indiana law it is by no means certain that defendants would prevail since the intention of the parties would have to be determined and that is an issue of fact. What is more certain is that, because of that factual issue, under Indiana law the trial court's determination of that issue pursuant to a section 2—619 motion would have been inappropriate. Such factual issues are best not determined summarily. See *Petty v. Crowell*, 306 Ill. App. 3d 774, 775, 715 N.E.2d 317, 319 (1999); 735 ILCS 5/2—619 (West 1992). That is not the case under Illinois's specific-identity rule, which is categorical.

■ In deciding choice-of-law questions in tort cases, Illinois follows the Restatement (Second) of Conflict of Laws and uses a most-significant-contacts approach similar to the one delineated in section 145. "Illinois courts apply the local law of the place of the injury unless Illinois has a more significant relationship with the occurrence and with the parties." *Vickrey v. Caterpillar Tractor Co.*, 146 Ill. App. 3d 1023, 1025, 497 N.E.2d 814, 816 (1986). "If Illinois has the more significant relationship with the occurrence and the parties, the law of Illinois should apply." *Vickrey*, 146 Ill. App. 3d at 1025, 497 N.E.2d at 816-17. According to the Restatement, it is this most-significant-contacts approach that should be used in deciding which law should apply to determine the effect of a release. See Restatement (Second) of Conflict of Laws § 170 (1971) ("The law selected by application of the rule of § 145 determines the effect of a release *** given to one joint tortfeasor upon the liability of the others").

Under the Illinois rule, as under section 145, contacts which should be evaluated include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered. See *Vickrey*, 146 Ill. App. 3d at 1026, 497 N.E.2d at 817; *Ingersoll v. Klein*, 46 Ill. 2d 42, 47-48, 262 N.E.2d 593, 596 (1970); Restatement (Second) of Conflict of Laws § 145(2) (1971). According to the Restatement, these contacts are to be weighed "according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145 (1971).

■ In conducting a significant-contacts analysis, Illinois courts do not merely count the contacts. See *Malatesta v. Mitsubishi Aircraft International, Inc.*, 275 Ill. App. 3d 370, 379, 655 N.E.2d 1093, 1099 (1995). Instead, they apply a more sophisticated "interest analysis" that involves a three-step process: (1) isolate the issue presented; (2) identify the relevant policies embraced in the laws in conflict; and (3) examine the contacts and determine which jurisdiction has a superior interest in having its policy applied. *Malatesta*, 275 Ill. App. 3d at 379-80, 655 N.E.2d at 1099; *Vickrey*, 146 Ill. App. 3d at 1026, 497 N.E.2d at 817.

As noted, the issue here is whether a general release such as the one in question operates to discharge tortfeasors other than those who bargained for the release, or whether such other tortfeasors instead are discharged only if they are specifically identified in the document.

In examining Illinois's and Indiana's contacts with the occurrence and the parties, we note first that Nicholas' injury occurred in Indiana. Second, plaintiffs are residents and domiciliaries of Illinois, as was

Vera Ortega, the driver of the watercraft, while defendants are Minnesota corporations with their principal place of business in Minnesota. Timothy Lawrence, the owner of the watercraft, is an Indiana resident, but his insurer, Allstate, which funded the settlement, is headquartered in Illinois. As to the place where the conduct causing the injury occurred, for purposes of plaintiffs' action against the Arctco defendants, that could only have been Minnesota. It is undisputed that there was no relationship between plaintiffs and the Arctco defendants prior to the July 22, 1995, accident. However, the accident occurred while Nicholas and his father were vacationing in Indiana with other Illinois residents including Vera Ortega. If there was a relationship between plaintiffs and Vera Ortega prior to the accident, it would appear to have been centered in Illinois, where they were all residents.

The only relevant contacts favoring Indiana are that the accident occurred there and that Timothy Lawrence, the owner of the watercraft, is an Indiana resident. Illinois is the residence and domicile of plaintiffs as well as the place where Allstate is based, and Vera Ortega, the driver of the watercraft, was an Illinois resident. The Arctco defendants are Minnesota corporations, and thus any conduct of theirs causing the injury would have occurred in Minnesota. However, those Minnesota contacts are irrelevant to any choice of law between Indiana and Illinois.

█ Looking at these contacts, it would appear that Illinois has the more significant relationship with the occurrence and the parties and that Illinois law should apply. See *Vickrey*, 146 Ill. App. 3d at 1024-25, 497 N.E.2d at 816-17; *Ingersoll*, 46 Ill. 2d at 45, 262 N.E.2d at 595. That conclusion is reenforced by our review of the policies underlying the laws in conflict. See *Malatesta*, 275 Ill. App. 3d at 379-80, 655 N.E.2d at 1099; *Vickrey*, 146 Ill. App. 3d at 1026, 497 N.E.2d at 817. As noted, Illinois's rule as to general releases is derived from section 2(c) of the Illinois Joint Tortfeasor Contribution Act (the Act), which provides that where a release "is given in good faith to one or more persons liable in tort arising out of the same injury ***, it does not discharge any of the other tortfeasors from liability for the injury *** unless its terms so provide." 740 ILCS 100/2(c) (West 1992). That statute is based upon the Uniform Contribution Among Tortfeasors Act, an important purpose of which was to abolish the common law rule that the release of one joint tortfeasor released all joint tortfeasors. *Alsup*, 101 Ill. 2d at 199-200, 461 N.E.2d at 363. According to the court in *Alsup*, the common law rule had been described as " 'harsh,' 'without any rational basis,' and 'very unfair,' " and had been criticized as often operating "to violate the intentions of persons giv-

ing releases." *Alsup*, 101 Ill. 2d at 200-01, 461 N.E.2d at 363-64, J. Calamari & J. Perillo, Contracts § 20—3 (2d ed. 1977). Thus in enacting section 2(c) the Illinois legislature "intended to abolish the common law rule that produced an involuntary discharge of joint tortfeasors." *Alsup*, 101 Ill. 2d at 201, 461 N.E.2d at 364. In place of the common law rule is Illinois's specific-identity approach under which, as indicated, the release of one tortfeasor does not discharge others unless they are specifically identified in the document.

As further noted, Indiana also abolished the common law rule. In *Huffman v. Monroe County Community School Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992), the Indiana Supreme Court held that "[t]he reasoning supporting the existence of the [common law] release rule is no longer valid in light of the enactment of the Indiana Comparative Fault Act." The common law rule was "designed to prevent unjust enrichment by not allowing a plaintiff to recover more than one hundred percent of his total loss." *Huffman*, 588 N.E.2d at 1266. However, because the Comparative Fault Act (Ind. Code Ann § 34—51—2—1 (Michie 1998)) prohibits verdicts which compensate a claimant for more than 100% of his damages, the possibility of such unjust enrichment was eliminated. *Huffman*, 588 N.E.2d at 1266. Thus the *Huffman* court replaced the common law rule with Indiana's intent-of-the-parties approach under which, as noted, a release discharges only tortfeasors who were parties to the agreement "unless it is clear from the document that others are to be released as well." *Huffman*, 588 N.E.2d at 1267. The court explained that a release should be interpreted according to the standard rules of contract law, "with the intention of the parties regarding the purpose of the document governing." *Huffman*, 588 N.E.2d at 1267.

Since the common law rule was abolished in both Illinois and Indiana, it might appear that the two states' underlying policies are the same. However, the measures chosen to replace the common law rule in each state are not the same, and it is in that distinction that the difference between the policies can be seen. Under the Indiana rule, for example, extrinsic evidence may be considered in some instances to determine the parties' intent, while under Illinois's specific-identity rule, such evidence is immaterial. See *Noonan v. Williams*, 686 A.2d 237, 242-44 (D.C. 1996) (comparing specific-identity rule and intent rule). In Illinois a tortfeasor is discharged only if he is specifically identified in the release. That approach eliminates ambiguity, and it is partly for that reason that some courts have suggested that such a categorical rule is the best means of ascertaining the parties' actual intent. See *Noonan*, 686 A.2d at 243. Regardless of whether the specific-identity approach is the best method, it is clearly different

from the intent-of-the-parties approach. Hence, to the extent that the two methods differ, the application of Indiana's rule would hinder the full realization of the underlying policy in Illinois, which chose the more restrictive specific-identity rule.

Taking into consideration Illinois's and Indiana's respective contacts with the occurrence and the parties, as well as the policies underlying the two states' substantive rules regarding general releases, we conclude that Illinois has the superior interest in having its policy (and law) applied. See *Malatesta,* 275 Ill. App. 3d at 379-80, 655 N.E.2d at 1099; *Vickrey,* 146 Ill. App. 3d at 1026, 497 N.E.2d at 817. That conclusion is consistent with "the modern approach to choice-of-law questions, which places the greatest importance on the forum's public policy." *Morris B. Chapman & Associates, Ltd. v. Kitzman,* 307 Ill. App. 3d 92, 103, 716 N.E.2d 829, 839 (1999), *appeal allowed,* 187 Ill. 2d 571, 724 N.E.2d 1269 (2000).

However, even if it were concluded that because Indiana is the place where the injury occurred, its law should apply to those aspects of the case which are more closely linked to the tort, Indiana's law still would not apply to the particular issue at bar. "[A]ll issues in tort need not be governed by a single law." Restatement (Second) of Conflict of Laws § 170, Comment *c,* at 509 (1971). As indicated, the issue here is whether general terms such as "any other person, firm or corporation," as used in the August 16, 1997, release, operated to discharge the Arctco defendants. Clearly the place where the injury occurred has little relevance to that issue, which centers not on any tortious conduct but on the effect of the release in question. Of far more importance to that issue is that the release was executed in Illinois and that three of the four parties who were named (plaintiffs, Vera Ortega and Allstate) were either domiciled or headquartered in Illinois, which thus has an obvious interest in how such a release is to be interpreted. See Restatement (Second) of Conflict of Laws § 145 (1971) (contacts should be evaluated according to their importance to the particular issue). Hence even if Indiana law applied to other aspects of this case, it is Illinois law that would apply to the question at issue: whether the August 16, 1997, general release discharged the Arctco defendants.

Defendants argue that, even if Illinois law did apply, their counterclaim for indemnity would remain valid and enforceable because *Alsup* and its progeny, as well as section 2(c) of the Act, apply only to releases and not to indemnification. Thus, according to defendants, although Illinois law bars them from enforcing the release provision, they still could enforce the indemnification provision of the release. We disagree.

Defendants' recommended distinguishing between the release and the indemnification provisions amounts to a distinction without a difference. The release provision of the August 16, 1997, parents' release and indemnity agreement discharges Timothy Lawrence, Vera Ortega and Allstate from any liability arising from the accident, while the indemnification provision guarantees that Barbara will repay them for any amount they are compelled to pay as a result of the accident. The two provisions support and achieve the same objective: the discharging and holding harmless of Lawrence, Ortega and Allstate from liability in exchange for payment of the settlement amount. To allow the indemnity provision to apply while at the same time barring application of the release provision would not only violate section 2(c) of the Act but would also undermine its policy, *i.e.*, the abolishing of the "very unfair" common law rule. See *Alsup*, 101 Ill. 2d at 200-01, 461 N.E.2d at 363-64. We decline to construe the law in such a fashion.

The application of Illinois's specific-identity rule as stated in *Alsup* and *Trexler* renders the release in question unenforceable by the Arctco defendants. Because the Illinois release rule is not limited to minors, the August 16, 1997, release, thus, is unenforceable not only as to Nicholas' claims but also as to the claims of Barbara as an individual.

For the reasons set forth above, we affirm the trial court's decision granting plaintiffs' motion to dismiss defendants' counterclaim for indemnity.

Affirmed.

CAHILL, P.J., and COUSINS, J., concur.