JACOB TOWNSEND, a Minor, By and Through His Mother and Next Friend, Michelle Townsend, *et al.*, Plaintiffs-Appellees, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 1—05—4045

Opinion filed November 8, 2006.

Roger L. Longtin, Dennis J. Powers, and Matthew F. Carmody, all of DLA Piper Rudnick Gray Cary US LLP, of Chicago, and James M. Brogan and Nancy Shane Rappaport, both of DLA Piper Rudnick Gray Cary LLP, of Philadelphia, Pennsylvania, for appellant.

Michael W. Rathsack, Evan A. Hughes, Craig E. Hilborn, and Kevin C. Riddle, all of Chicago, for appellees.

PRESIDING JUSTICE THEIS delivered the opinion of the court: This case presents conflict of laws questions regarding the allowance of strict liability, punitive damages, and caps on noneconomic damages in a products liability claim. Plaintiffs, Michelle Townsend, individually and on behalf of her minor son Jacob, brought this strict products liability and negligence action against defendant, Sears, Roebuck and Co. (Sears), seeking damages from injuries Jacob sustained when his father backed over him while operating a lawn tractor. The trial court certified the following question for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

"Whether Illinois or Michigan law applies to a products liability and negligence action where the plaintiff is a resident of Michigan and the injury occurs in Michigan, the product was manufactured in South Carolina, the defendant is a New York corporation domiciled in Illinois, and the conduct complained of, including certain design decisions, investigations of prior similar occurrences, product testing and the decision to distribute nationally in its retail stores occurred in Illinois[.]"

For the following reasons, Illinois law governs the liability and damages issues in the present case.

BACKGROUND

Plaintiffs are residents of Michigan. The minor plaintiff's father, not a party to this litigation, purchased the Craftsman riding lawn tractor in Michigan from Sears, a New York corporation with its principal place of business and corporate headquarters in Illinois. On May 11, 2001, the minor plaintiff, Jacob, was injured when his father backed over him while operating the tractor in Michigan.

Plaintiffs filed a complaint based upon theories of strict product liability and negligence premised on defective design and a failure to warn, and sought both compensatory and punitive damages. Plaintiffs alleged that Sears "designed, marketed, manufactured, inspected, tested, and sold a Sears Craftsman Lawn Tractor" and that the tractor "was defectively designed, defectively marketed and unreasonably dangerous." Plaintiffs further alleged that Sears participated in the design and marketing of the tractor and had actual knowledge of its unreasonably dangerous condition. Specifically, plaintiffs alleged that the tractor lacked a "no-mow-in-reverse" (NMIR) safety feature to prevent back-over injuries. Sears filed an answer and affirmative defenses. Thereafter, Sears' motion to dismiss on the basis of *forum non conveniens* was denied and this court then denied Sears' petition for leave to appeal pursuant to Supreme Court Rule 306(a)(2). 210 Ill. 2d R. 306(a)(2).

Subsequently, plaintiffs filed a motion to apply Illinois law to the issues of liability as well as the issues of compensatory and punitive damages, arguing that Illinois was the state with the most significant relationship to the relevant issues in this case. In response, Sears argued that Michigan substantive law should apply to any conflict of law, where plaintiffs are Michigan residents and the injury occurred in Michigan. In resolving the dispute, the trial court made certain findings of fact. Notably, the court found that the tractor was manufactured in South Carolina, but that Sears was extensively involved in the design of the tractor, and that the conduct relating to the main issue in the case, the decision not to incorporate an NMIR feature in the tractor, took place in Illinois. After examining the contacts and identifying the relevant policies embraced in the laws in conflict, the trial court concluded that Illinois had a superior interest in having its policies applied and, therefore, held that Illinois law should govern the instant action with respect to both liability and damages.

Thereafter, the trial court found that its opinion involved a question of law as to which there was substantial grounds for difference of opinion and consequently certified the choice-of-law question for further review pursuant to Supreme Court Rule 308. 155 Ill. 2d R. 308. This court granted Sears' application for leave to appeal.

ANALYSIS

Our analysis begins with an understanding of the procedural posture of this case as it relates to the certified question. Supreme Court Rule 308 provides in pertinent part as follows:

"Rule 308. Interlocutory Appeals by Permission

(a) Requests. When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." 155 Ill. 2d R. 308(a).

The scope of review in an interlocutory appeal under Rule 308 is ordinarily limited to the question certified by the trial court, which, because it must be a question of law and not fact, is reviewed *de novo*. 155 Ill. 2d R. 308; *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902, 834 N.E.2d 952, 957 (2005). Generally, we cannot address issues outside that area or rule on the propriety of any underlying order. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998, 803 N.E.2d 1020, 1026 (2004). Accordingly, with these principles in mind, we consider the certified question, given the facts as provided by the trial court.

At the outset, the parties agree that conflicts exist between Illinois and Michigan law in three significant respects. We briefly address them here. With respect to liability, Illinois has adopted the rule of strict liability in tort for product defects (see, *e.g.*, *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 764 N.E.2d 35 (2002)), whereas Michigan has refused to adopt the doctrine, finding that "the proper test for determining a manufacturer's liability for defective design is negligence" (*Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 682 n.9, 687 n.25, 365 N.W.2d 176, 181 n.9, 184 n.25 (1984); see also *Gross v. General Motors Corp.*, 448 Mich. 147, 528 N.W.2d 707 (1995)). The distinction between the two theories lies in the concept of fault. A real conflict exists in that the inability of the defendant to know or prevent the risk is not a defense to a strict liability action, whereas such an inability would preclude a finding of negligence. *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 97, 828 N.E.2d 1128, 1148 (2005).

With respect to compensatory damages, the Illinois Supreme Court has rendered unconstitutional a statutory cap on noneconomic damages in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 416, 689 N.E.2d

1057, 1081 (1997), whereas Michigan imposes caps on noneconomic damages in product liability actions. Mich. Comp. Laws Ann. §600.2946a (West 2000). Lastly, Illinois permits the recovery of punitive damages in certain product liability cases[1] (see, *e.g.*, *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978)), whereas Michigan does not allow the recovery of punitive damages in product liability cases (*McAuley v. General Motors Corp.*, 457 Mich. 513, 519-20, 578 N.W.2d 282, 285 (1998)).

To determine which state law applies on these conflicts issues, we look to the conflicts law of Illinois, the forum state. *Esser v. McIntyre*, 169 Ill. 2d 292, 297, 661 N.E.2d 1138, 1141 (1996). Although tort claims in Illinois at one time were governed by the law of the place of injury, that approach was rejected long ago by our supreme court in favor of the more flexible "most significant relationship" test under the Restatement (Second) of Conflict of Laws (1971) (the Restatement). *Ingersoll v. Klein*, 46 Ill. 2d 42, 47, 262 N.E.2d 593, 596 (1970); see also *Morris B. Chapman & Associates v. Kitzman*, 193 Ill. 2d 560, 568, 739 N.E.2d 1263, 1269 (2000). The *Ingersoll* court recognized that a " 'wooden application of a few overly simple rules, based on the outmoded "vested rights theory," cannot solve the complex problems which arise in modern litigation and may often yield harsh, unnecessary and unjust results.' " *Ingersoll*, 46 Ill. 2d at 47, 262 N.E.2d at 596, quoting *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 13, 203 A.2d 796, 801 (1964). *Ingersoll* explained that "there are many other choice-influencing considerations which are more significant than predictability of results." *Ingersoll*, 46 Ill. 2d at 48, 262 N.E.2d at 596. Thus, under Illinois choice-of-law rules, the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue. *Esser*, 169 Ill. 2d at 298, 661 N.E.2d at 1141; Restatement (Second) of Conflict of Laws §146 (1971).

■ The Restatement provides two sets of criteria for measuring the state with the most significant relationship. First, the court must consider the broad general principles contained in section 6, which underlie all choice-of-law rules. Of the principles enumerated there, several are potentially applicable to this tort case: (1) the basic policies underlying the particular field of law; (2) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and (3) the relevant policies of

---

[1] In this case, the trial court found that plaintiffs established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. That issue is not before this court.

the forum. *Esser*, 169 Ill. 2d at 299 n.1, 661 N.E.2d at 1142 n.1; Restatement (Second) of Conflict of Laws §6(2) (1971); see also Restatement (Second) of Conflict of Laws §145(1), Comment *b,* at 415-16 (1971).

Second, in a tort action, section 145(2) of the Restatement (Second) of Conflict of Laws sets forth the contacts which should be evaluated in applying the principles of section 6. These contacts include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered. *Esser,* 169 Ill. 2d at 298, 661 N.E.2d at 1141; Restatement (Second) of Conflict of Laws §145(2) (1971). These contacts are to be weighed " 'according to their relative importance with respect to the particular issue.' " *Wreglesworth v. Arctco, Inc.,* 316 Ill. App. 3d 1023, 1031, 738 N.E.2d 964, 971 (2000), quoting Restatement (Second) of Conflict of Laws §145(2) (1971).

■As *Ingersoll* reminds us, the application of choice-of-law rules is not a mechanical process. In conducting a significant-relationship analysis, Illinois courts "do not merely count the contacts." *Wreglesworth,* 316 Ill. App. 3d at 1031, 738 N.E.2d at 971. Instead, the court applies a more sophisticated interest analysis that involves a three-step process: (1) isolate the issue presented; (2) identify the relevant policies embraced in the laws in conflict; and (3) examine the contacts and determine which jurisdiction has a superior interest in having its policy applied. *Wreglesworth,* 316 Ill. App. 3d at 1031, 738 N.E.2d at 971; *Malatesta v. Mitsubishi Aircraft International, Inc.,* 275 Ill. App. 3d 370, 379, 655 N.E.2d 1093, 1099 (1995); *Vickrey v. Caterpillar Tractor Co.,* 146 Ill. App. 3d 1023, 1026, 497 N.E.2d 814, 817 (1986). This approach is based on the conclusion that contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws. *In re Estate of Barnes,* 133 Ill. App. 3d 361, 367, 478 N.E.2d 1046, 1050 (1985); *Mitchell v. United Asbestos Corp.,* 100 Ill. App. 3d 485, 493, 426 N.E.2d 350, 355-56 (1981).

As noted, the first issue here is whether Illinois's strict liability law or Michigan's negligence law determines whether Sears defectively designed the lawn tractor without an NMIR safety feature. In examining the relevant policies underlying the state laws in conflict, the court may consider the constitution, legislative enactments and judicial decisions. *Morris B. Chapman & Associates,* 193 Ill. 2d at 569, 739 N.E.2d at 1270. The policies that underlie the law of strict liability in Illinois reflect a consumer protective and a corporate regulatory policy.

The purpose is to "place the loss caused by defective products on those who create the risks and reap the profits by placing such products in the stream of commerce." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill. 2d 21, 37-38, 682 N.E.2d 45, 53 (1997).

In contrast, Michigan's negligence law reflects a producer protective policy designed to protect domiciled producers from excessive financial liability. *In re Disaster at Detroit Metropolitan Airport on August 16, 1987*, 750 F. Supp. 793, 801 (E.D. Mich. 1989). "By protecting the economic health of companies that conduct business in Michigan, the state derives substantial revenues in sales and taxes, directly and indirectly, and furthers the economic well being of the entire state." *In re Disaster at Detroit Metropolitan Airport*, 750 F. Supp. at 801.

The relevant contacts at issue as reflected in the certified question are as follows. Plaintiffs are Michigan residents, and the injury occurred in Michigan. Sears is a New York corporation with its principal place of business and headquarters in Illinois. The conduct allegedly causing the injury, *i.e.*, the design decisions, testing, investigation of prior incidents, and the decision to distribute this particular product without the NMIR feature, occurred in Illinois. The relationship between the parties is not addressed in the certified question. Nevertheless, here, where Jacob did not purchase the product from Sears, there is no relevant relationship between the parties.

■ In examining the interests of each state, Michigan does not have a strong interest in the application of its producer protective products law to Sears here, where the product was manufactured in South Carolina and relevant design decisions were made in Illinois. Although Sears certainly does business in Michigan as a retailer, Michigan's corporate protective products law would not materially advance the goal of protecting its resident producers from strict liability in this case. Nor would its interest be impaired by applying a stricter standard of liability on a New York corporation with its principal place of business in Illinois. Furthermore, Michigan's policy cannot be said to promote the welfare of injured Michigan plaintiffs. Nor is its policy designed to punish its plaintiffs. Thus, Michigan would have no interest in denying its residents easier proofs at trial for the purpose of benefitting a foreign producer or designer.

Sears argues that we must give significant weight to Jacob's father's conduct in operating the lawn tractor in Michigan. This contact is only relevant to Michigan's policy of protecting against excessive financial liability to the extent that his father's conduct leads to potential liability in Michigan. Here, that is not the case because his father is not a party nor does he bear any liability to his

son as framed in this action. As a third party, his conduct is not related to the policies underlying Michigan's negligence law. Thus, his conduct is not relevant to the choice-of-law analysis in the present case. Accordingly, where Michigan's contacts are not significantly related to the policies underlying its negligence law, Michigan does not possess a strong interest in having its liability law apply here.

In contrast, Illinois has a strong interest in applying its products liability law to regulate culpable conduct occurring within its borders, induce the design of safer products, and deter future misconduct. Therefore, Illinois, Sears's principal place of business, the place where the decision was allegedly made to design the lawn tractor without an NMIR feature, and where the decision was allegedly made to place the product into the stream of commerce, has a significant interest in applying its design defect standards to effectuate the regulatory policy reflected in its law. Consequently, although generally the law of the place of injury determines the liability law of the parties, since Illinois has a more significant relationship to this issue, Illinois's strict product liability law applies in the present case.[2]

■ Next, plaintiffs argue that under the modern approach to choice of law, the court is required to separately consider which state's law governs each substantive issue if the issue would be resolved differently under the law of two or more potentially interested jurisdictions. This doctrine has been termed "depecage," referring to the process of cutting something into pieces, and has been applied in Illinois. *Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 (7th Cir. 1996) (defining the term and applying it to distinct claims); see also Restatement (Second) of Conflict of Laws §145(1) & Comment *d*, at 417 (1971) ("[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states."); 63B Am. Jur. 2d *Products Liability* §1522 (1997) ("the court may apply the law of one state to issues of liability and that of another to issues of measure of damages against the same defendant"); J. Kircher & C. Wiseman, Punitive Damages Law & Practice §23:20, at 54-55 (2d ed. 2000) (choice of law analysis does not apply the case as a whole, but to each separate issue in the case). Ac-

---

[2]Taking into account the contacts and the relative laws of each state, it is helpful to note that the plaintiff-affiliating contacts are located in Michigan, which has a pro-defendant law, while both defendant-affiliated contacts, especially the "conduct" which is the object of the complaint, are located in a state that has pro-plaintiff laws. This pattern has been deemed an "inverse conflict." S. Symeonides, *Choice of Law for Products Liability: The 1990s and Beyond*, 78 Tulane L. Rev. 1247 (2004).

cordingly, we next consider which state's law governs the availability of punitive damages.

■ The purposes underlying the allowance of punitive damages are distinct from compensatory damages, namely, punishment of the defendant and deterrence of future wrongdoing. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 276, 641 N.E.2d 402, 407 (1994) (distinguishing between compensatory and punitive damages). Therefore, Illinois law on punitive damages reflects a corporate regulatory policy. Conversely, the purpose underlying the disallowance of punitive damages is to protect resident defendants from excessive financial liability and reflects a corporate protection policy. *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594, 607 (7th Cir. 1981). "By insulating those companies, which conduct extensive business within its borders, the nonpunitive damages states hope to promote corporate migration into its economy. The protection of the financial stability of domiciliary corporations is designed to enhance the economic climate and well being of the state by generating revenues." *In re Disaster at Detroit Metropolitan Airport*, 750 F. Supp. at 806; see also *In re Aircrash Disaster Near Monroe, Michigan on January 9, 1997*, 20 F. Supp. 2d 1110, 1112 (E.D. Mich. 1998).

Having identified the policies within the laws at issue, we must next examine the precise interest that each state has in applying its damages law to this case. When the primary focus of a law is to deter or punish misconduct, the state with the most significant interest is the one where the conduct occurred. Restatement (Second) of Conflict of Laws §146, Comments *c, e*, at 430, 432 (1971). Thus, Illinois, where the alleged design defects and corporate knowledge of previous accidents occurred, has a definite interest in punishment, deterrence of future wrongdoing, and corporate accountability.

Michigan, the place of plaintiffs' residence and the place of injury, has an interest in assuring that plaintiffs are compensated for their injuries. Nevertheless, where the purpose of disallowing punitive damages is not related to redressing the plaintiffs' injury, once the plaintiffs are made whole by recovery of the compensatory damages to which they are entitled, the interests of Michigan law are satisfied. *In re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d at 613. Accordingly, Illinois, as Sears's principal place of business and the place where the alleged corporate misconduct occurred, has the most significant relationship to the issue of punitive damages.

■ We next consider which state's law governs the extent of plaintiffs' entitlement to noneconomic damages. In *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997), our supreme court held unconstitutional a statutory cap on noneconomic damages,

holding that the cap violated the special legislation clause of the Illinois Constitution because it created an arbitrary legislative classification that discriminated in favor of a select group without a sound, reasonable basis. *Best*, 179 Ill. 2d at 409, 689 N.E.2d at 1078. Furthermore, the court held that the caps violated the separation of powers clause by improperly delegating to the legislature the power of remitting verdicts and judgments, a power unique to the judiciary. *Best*, 179 Ill. 2d at 413, 689 N.E.2d at 1080. The court articulated that the cap disregarded the jury's careful deliberative process in determining the damages that would fairly compensate injured plaintiffs who had proven their causes of action and "unduly encroache[d] upon the fundamentally judicial prerogative of determining whether a jury's assessment of damages is excessive within the meaning of the law." *Best*, 179 Ill. 2d at 414, 689 N.E.2d at 1080.

In contrast, Michigan upheld a statutory cap on noneconomic damages in *Kenkel v. Stanley Works*, 256 Mich. App. 548, 665 N.W.2d 490 (2003), *appeal denied*, 469 Mich. 1008, 674 N.W.2d 382 (2004), finding that it was "rationally related to the legitimate governmental interests of encouraging the manufacture and distribution of products in Michigan and protecting those who place products into the stream of commerce from large damage awards in jury trials." *Kenkel*, 256 Mich. App. at 564-65, 665 N.W.2d at 500.

We next examine the precise interest that each state has in applying the particular damages law to this case. We recognize that plaintiffs, as Michigan residents, are not subject to Illinois's constitutional protections and, therefore, Illinois would have little or no interest in protecting plaintiffs from caps on noneconomic damages. Nevertheless, we must also consider that Illinois, as the forum state where the case will be tried, has a very strong interest in its constitutional protection of separation of powers within its borders and, therefore, has a strong interest in protecting against another state's legislative encroachment on the inherent power of its judiciary to determine whether a jury verdict is excessive. Thus, Illinois has a compelling public policy interest in applying Illinois law with respect to caps on noneconomic damages.

Michigan certainly has an interest in seeing that its residents are compensated for their injuries as that is the state which will be socially and economically impacted by their recovery or nonrecovery. Nevertheless, where the purpose of the cap is not directed toward the injured victim who resides in Michigan, these contacts are not related to the policies underlying its law, and, therefore, Michigan does not possess a strong interest in having its law applied to the present case. Where Illinois's compelling public policy interests override any interest that

Michigan may have with respect to this issue, the law of Illinois applies to compensatory damages.

To the extent Sears relies upon several cases to support its argument that Michigan law should apply to both the liability and damages issues, these cases are inapposite on several levels, both factually and procedurally. In *Walters v. Maren Engineering Corp.*, 246 Ill. App. 3d 1084, 617 N.E.2d 170 (1993), the plaintiff, a Kansas resident, was injured at work when his hand became caught in a cardboard shredding machine. He brought a strict liability claim against the manufacturer of the shredder and a negligent modification claim against other defendants for negligent modification of the product. Prior to trial, the court held that the substantive law of Kansas, the place of injury, would apply even though the product was designed in Illinois. *Walters*, 246 Ill. App. 3d at 1087, 617 N.E.2d at 171. After trial, the jury found the plaintiff 40% at fault and his employer 60% at fault. The defendants were found to be 0% at fault. *Walters*, 246 Ill. App. 3d at 1088, 617 N.E.2d at 172.

Initially, we note that the *Walters* court did not address what substantive laws were in conflict between Illinois and Kansas and did not engage in a sophisticated interest analysis approach. Therefore, it is not clear what policies were underlying these laws and the respective states's interests in those policies. Thus, this case has little or no comparative value here.

Furthermore, from a factual standpoint in *Walters*, Kansas had more significant contacts where the alleged improper modifications occurred in either Ohio or Kansas, plaintiff was injured and resided in Kansas, and "other questioned conduct of [the employer]," a Kansas corporation, was found to have occurred in Kansas. Thus, on balance, the *Walters* court held that Illinois's contacts were not more significant than Kansas's contacts. *Walters*, 246 Ill. App. 3d at 1091, 617 N.E.2d at 174. Lastly, from a procedural standpoint, the appellate court was asked to review the choice-of-law question *de novo* after a jury had found that the conduct causing the injury was entirely borne by the plaintiff and his employer, both residents of Kansas, and that the defendants had no liability. Thus, the proofs at trial may have significantly impacted the *de novo* choice-of-law determination on appeal.

Sears additionally relies upon *Hardly Able Coal Co. v. International Harvester Co.*, 494 F. Supp..249 (N.D. Ill. 1980). That case involved a product liability claim where only the product itself was damaged and there was no claim for compensatory damages related to bodily injury. Consequently, the choice-of-law conflict arose in that Kentucky law allowed the plaintiff to recover for purely economic losses, whereas Il-

linois law did not. *Hardly Able Coal Co.*, 494 F. Supp. at 249-50. The court recognized that even though Illinois had an interest in the liability imposed on companies based there, Kentucky had an equally legitimate interest in providing a remedy for its residents. *Hardly Able Coal Co.*, 494 F. Supp. at 250. *Hardly Able* is therefore distinguishable where the issue in conflict created a qualitatively different analysis requiring a different comparison of interests to contacts. Accordingly, we find its application here not instructive.

For all of the foregoing reasons, we answer the certified question as follows: Illinois law governs the issues of liability and damages in the present case. We reiterate that our holding narrowly applies to the specific comparison of interests to contacts as set forth in the present case and that each case must be analyzed based upon the particular laws in conflict as they relate to the relevant contacts at issue.

Certified question answered.

GREIMAN and KARNEZIS, JJ., concur.