(No. 31564.—

ROBERT EUGENE SHEPHERD, JR., *et al.,* Appellants, *vs.* HELEN B. SHEPHERD *et al.,* Appellees.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

PUTTING & PUTTING, of Springfield, for appellants.

BARBER & BARBER, of Springfield, (CLAYTON J. BARBER, and ALTON G. HALL, of counsel,) for appellees.

EARL R. BICE, of Springfield, guardian *ad litem*.

MR. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of Sangamon County construed the last will and testament of Charles M. Shepherd, deceased, and ordered partition of a farm of 188 acres between the widows of a son and grandson, respectively, of the testator. A grandson and a great grandson of the testator prosecute this appeal, a freehold being necessarily involved.

Charles M. Shepherd, a resident of Sangamon County, died testate on June 16, 1910. He left surviving his three sons as his only heirs-at-law. By the third section of his will, the testator devised a farm of 188 acres, located seven miles southeast of Springfield, in Sangamon County, to his son Charles Raymond Shepherd, "to have and to hold for and during the term of his natural life only, and the remainder over in fee simple I give and devise equally, share and share alike, to such of my said sons, Charles Raymond Shepherd, children, if any, that survive him and who live to attain the age of twenty-one years, and in

case he have no children that survive him and who attain such age then I will and direct that said remainder in fee simple shall become the property of my two sons, Alva F. Shepherd and Louis P. Shepherd, equally, and in case either of my said sons, Alva F. or Louis P., be dead, to their lineal descendants, per stirpes."

When Charles M. Shepherd executed his will and, later, at the time of his death, his son Charles Raymond Shepherd was unmarried and lived in his father's household. Fourteen months after the testator's death, Charles Raymond Shepherd and Minnie S. Shepherd were married and, thereafter, lived on the farm in controversy. Two sons, Charles Franklin and Robert Eugene, hereafter referred to as Charles and Robert, were born of the marriage. In 1933, when seventeen years of age, Charles entered the military service of the United States. Robert was born May 2, 1925. Charles Raymond Shepherd died on May 21, 1942, leaving his wife, Minnie S. Shepherd, and their two sons, Charles, then twenty-six years of age, and Robert, seventeen years of age, his only heirs-at-law. By his will, Charles Raymond Shepherd devised all his real estate to his wife, Minnie, for life, with remainder to their two sons, share and share alike. He, however, left no real estate.

On June 8, 1942, seventeen days after the death of Charles Raymond Shepherd, his older son, Charles, the latter's wife, Helen Shepherd, and the younger son, Robert, executed and delivered a warranty deed, without consideration, to Minnie S. Shepherd, conveying the farm to her, to have and to hold during the term of her life only, with remainder after her death to her two sons, Charles and Robert. The deed was caused to be recorded in the recorder's office of Sangamon County. About July 1, 1943, after graduation from high school, Robert Shepherd entered the armed forces of the United States. He received his discharge on January 16, 1946. In the meantime,

Robert had married and, upon his return to Springfield, he, his wife, and their infant son, Robert Eugene Shepherd, Jr., lived on the family farm which was in the exclusive possession of, and being operated by, his mother. She paid Robert one hundred dollars per month for working on the farm and furnished him, his wife, and their child, board and lodging. Robert was residing on the farm when he attained his majority on May 2, 1946, and continued to live on the farm while in his mother's employment until the latter part of June when he went to Chicago to pursue a course in an electrical trade school under the G. I. Bill of Rights.

On June 21, 1946, Charles executed his will, devising all his real estate to his wife, Helen, for life, with remainder in fee simple to his nephew, Robert Eugene Shepherd, Jr. Charles Shepherd died on August 30, 1946, leaving his wife, Helen, his mother, Minnie, and his brother, Robert, as his only heirs-at-law.

On December 3, 1946, Robert Shepherd presented a quitclaim deed to his mother and requested her to execute the deed reconveying to him the interest in the farm which he had conveyed to her on June 8, 1942. Later, the same day, at his attorney's office, Robert handed his mother a written document, notifying her that he had rescinded and declared void the deed of June 8, 1942, conveying to her a life estate, demanded cancellation of the deed, a reconveyance, and an accounting to him of all rents, issues, profits and income received by her from the property since the day named. The next day, December 4, 1946, Robert Shepherd and his son, Robert Eugene Shepherd, Jr., by his father and next friend, brought an action in the circuit court of Sangamon County against the defendants, Helen B. Shepherd and Minnie S. Shepherd.

The complaint sets forth the facts narrated and alleges that, on June 8, 1942, Minnie Shepherd advised Robert

and induced him and his brother, Charles, to execute and deliver to her their warranty deed conveying to her a life estate in the farm; that Robert was then under the restraint of a fiduciary relationship with his mother; that, on June 8, 1942, Robert owned an undivided one-half interest in the farm worth more than $15,000; that in December, 1946, the remainder in the other half not owned by Robert was worth more than $10,000; that Robert, at the time he signed the deed, did not know its full purport and meaning but signed in good faith and reliance upon the representation and advice of his mother; that he was then a minor of immature judgment and insufficiently informed or experienced in transactions of this character; that he had decided it was a mistake on his part to have made the conveyance; that he did not consider it binding nor himself bound by it, and that he had elected to cancel and rescind the deed. The relief sought was a decree adjudging the deed of June 8, 1942, to the extent the interest of plaintiffs may be concerned, void as against them and as a cloud upon their title; cancellation of the deed; an accounting by his mother of the rents, issues and profits derived from the farm since June 8, 1942, and partition of the farm, according to the respective interests of the parties.

By their answer, the defendants, Helen and Minnie Shepherd, averred that, upon the death of Charles Raymond Shepherd, his son Charles, being his only child who had both survived him and attained the age of twenty-one years, became the sole owner in fee simple of the farm devised by Charles M. Shepherd; that, on the other hand, the younger son, Robert, took no right, title or interest in or to the farm under his grandfather's will because he had not attained the age of twenty-one years when his father's life estate terminated, and that the remainder took effect and vested in the remainderman. Answering further, defendants denied that he was induced to sign the deed

dated June 8, 1942, by any persuasion, restraint or undue or improper influence exercised by his mother, and averred that the deed was executed primarily at the instance of Charles Shepherd in order to provide for the support, care and maintenance of his mother and to divide the real estate with his brother, Robert, all in order to vest the title to the property in the parties to the deed in accordance with their several needs and in a manner to serve their best interests and, particularly, to better enable Minnie Shepherd to support and care for Robert, then seventeen years of age, who was residing with and being supported and maintained by her. Defendants averred that the deed greatly benefited Robert and his heirs by vesting in him title to an undivided one-half part of the real estate, even though he should die before attaining twenty-one years of age, and regardless of any possible adverse interpretation of the will that he must have attained his majority before the death of his father; by enabling his mother to furnish him with the necessary support, care and maintenance while he resided with her and was a member of her household during his minority, and that having received, in person and in behalf of his wife and child, the benefits and protection of the deed, Robert was barred and estopped from repudiating and disaffirming the deed. Defendants denied that plaintiffs were entitled to an accounting. Plaintiffs replied to the answer.

On September 2, 1947, Helen Shepherd filed in the probate court of Sangamon County her renunciation of the will of her deceased husband and elected to take the share allowed to her by law as his surviving widow.

The master in chancery to whom the cause was referred made his revised report, finding that Robert Shepherd, upon attaining twenty-one years of age, was vested with an undivided one-half interest in the property, subject to the life estate of his mother; that, having conveyed a life estate during minority, Robert had the right to rescind his action;

that "This was done;" that the deed to his mother, insofar as it affects the interest of Robert conveyed to her for life, had, by his rescission, been avoided, and that she should reconvey an undivided one-half of her life interest to him and account to him for one-half of the rents since his repudiation of the deed on December 3, 1946. Defendants' objections to the master's report were overruled and ordered to stand as exceptions. The chancellor sustained some of the objections, overruled others, and entered a decree finding that the execution of the deed by Robert Shepherd was free from fraud, bad faith, misrepresentation and undue influence; that it was for the "minor's" (Robert's) best interests; that it conveyed to him an immediate share of the real estate, whereas his grandfather's will gave him no interest whatever unless he attained the age of twenty-one years; that he, his wife and child were protected by it in case of his death before attaining such age; that, although the court was of the opinion he would have been entitled to share under his grandfather's will upon attaining twenty-one, the question was not free from doubt and the deed protected him from the possibility of an adverse decision; that, after attaining his majority, he failed to promptly repudiate his deed; that his son, Robert Eugene Shepherd, Jr., benefited under the will of his brother, Charles Shepherd; that these benefits cannot be returned; that Robert was, hence, estopped from rescinding the deed, and that, not being able to do equity, the relief sought should be denied. The decree adjudged that Minnie Shepherd, now Minnie S. Jackson, owns a life estate in the farm property; that subject thereto, Robert Shepherd owns an undivided one-half, and Robert Eugene Shepherd, Jr., and Helen Shepherd each an undivided one-fourth part, as tenants in common in fee simple, and that the life tenant, Minnie Jackson, need not render an accounting to any of the parties. Partition was ordered on the foregoing basis and commissioners appointed for the purpose. This appeal followed.

The evidence attending the execution of the deed on June 8, 1942, requires recounting. When the life tenant, Charles Raymond Shepherd, died on May 21, 1942, his younger son, Robert, then seventeen years of age, was living at home on the farm with his mother and attending high school in Springfield. The elder son, Charles, a United States Navy officer, was not in Sangamon County when his father died. His wife, Helen, who resided in Massachusetts, came to Springfield, and, about a week later, Charles arrived on leave, having learned of his father's death after his ship returned to port. As narrated, the life tenant owned no real estate at the time of his death on May 21, 1942, having had only a life interest in the farm. Helen Shepherd testified that her husband, Charles, after visiting attorney Charles F. Barber, reported that, so far as he knew, he was the sole heir under his grandfather's will and would like to make a deed to provide that his mother could live on the farm for the rest of her life; that Charles, proceeding upon the assumption that he had inherited all the farm for the reason he was the only child who had attained the age of twenty-one years at the time of his father's death, desired, in accord with the plan of his father's will, to share the farm property equally with his younger brother, after first providing for their mother's maintenance during the remainder of her life, and that, to accomplish this purpose, he caused a deed to be prepared. The matter was discussed on June 8, 1942, at a meeting of the two brothers, their mother, and Helen Shepherd in the office of attorney Barber, following the reading of the will of Charles Raymond Shepherd. Being satisfied, according to both Helen and Minnie Shepherd, the two brothers thereupon executed the deed.

Robert's version of the transaction is different. He testified that, on the morning before the family went to attorney Barber's office, his mother told him that she had had the attorney draw up a paper which would protect their

interests and allow her to manage the farm as she had done with "Dad" in the past. Robert testified, further, that his mother played up the idea his older brother and his wife were going "to sell us out, so to speak, to settle the estate and leave us kind of holding the bag," and, more particularly, that his mother said Helen Shepherd had come to Springfield "to get what she could out of the farm," and that his mother said Helen wanted to see that everything was left in shape so it could be sold, or settled, so they (Charles and herself) could obtain their part. Minnie Shepherd denied the statements attributed to her, testifying, instead, that, prior to the signing of the deed, she had not had any conversation with either of her sons about deeding any property to her and first learned of the deed in attorney Barber's office after the will was read. Robert added that his mother did not describe the paper which she told him would allow her to continue managing the farm; that, at the conference in the attorney's office, Barber said that Minnie Shepherd had requested the "paper" to be prepared for her to continue to manage the farm as she had done in the past; that the attorney asked their opinion and that he, Robert, stated he thought it was alright; that his brother replied, "If you [the attorney] say it is alright, I can't see where I could object," and that "it kind of put him [Charles] on the spot there, because it was thrown at him." According to Robert, he talked with no one other than his mother at the time of the transaction, depended upon her for advice and guidance in the matter, was not represented by counsel, did not discuss the matter of making the deed with his brother prior to its execution, and the only discussion with his brother occurred when the deed was presented.

Minnie Shepherd testified that she did not do anything to induce Robert to sign the deed, and that she neither asked him to have the deed prepared nor attorney Barber, whom she had retained as her attorney after her husband's

death, to prepare it. She testified that Charles, who could only be at home a short while, said, "I want everything straightened up;" that she did not know who originated the idea of making a deed to her, observing, "I just know that Franklin [Charles] was interested that I should stay there and carry on because that was always his wish that I stay there;" that, when she learned of the contemplated deed, she did not talk with her sons about it before they signed, and that the attorney first suggested that the deed be executed in accordance with the understanding between Charles and himself.

On and after June 8, 1942, Minnie Shepherd continued to live on and operate the farm. Upon his return to Springfield, in 1946, following his discharge from military service, Robert and his wife and their infant son returned to the farm, as previously narrated. Robert was working and living on the farm when he became twenty-one years of age on May 2, 1946. He continued in his mother's employment afterwards until late June, 1946, when he went to Chicago to attend an electrical trade school for six months. In the meantime, it appears from Robert's testimony, that, in the spring of 1946, while working on the farm, he suggested to his mother that she rent the farm to a tenant and retire.

As recounted, the older brother executed his will on June 21, 1946, and died on August 30, 1946. According to Helen Shepherd, Charles, to the very end of his life, wanted his mother to have the farm and when the latter visited him in New York in his last illness, said, "Mother, I want you to stay there." She volunteered the statement that, when she returned to Springfield for her husband's funeral, Robert approached her, making inquiry as to how she was going to pay the bills, saying that he would like to go in and obtain his share, then and there, instead of waiting until his mother died but that she refused, telling Robert that the property belonged to his mother as long as she

lived, reminding him that he had been willing to sign the deed to this effect and declared that she did not want any part of it, "I would never fight against anybody's mother." Helen Shepherd also testified that, subsequently, Robert telephoned her in Boston, announcing that he was going to sue her and his mother and wished to know if she would change her mind and join him, but that she declined.

It appears that Minnie Shepherd first learned of Robert's assertion of his alleged rights against her on December 3, 1946, the day before he instituted this action; that he came to the farm in a taxi about eleven o'clock in the morning and told her he wanted her to sign a quitclaim deed which he had with him; that, when she asked the purpose of the deed, Robert replied that he wanted his half; that, at his insistence she sign the deed, she told him she did not understand it and desired to talk to Uncle Al or somebody first and, that, finally, he requested her to go to Springfield to see his attorney, which she did. Upon being served with a written demand for a reconveyance and an accounting, Minnie Shepherd expressed a desire to consider the matter, whereupon Robert told her he wished she would advise him the first thing the next morning. The complaint was filed the following afternoon.

Plaintiffs contend that the chancellor erred in adjudging that Robert Shepherd was barred and estopped from repudiating and disaffirming the deed of June 8, 1942, so far as his interest in the farm is concerned. The allegations of plaintiffs' complaint that his mother advised and induced Robert to execute the deed, and that she exercised undue influence over him are without any basis whatever in the evidence adduced. It is reasonably clear that the motivating force, at the time the deed was executed, was the understandable desire of Charles Shepherd to make adequate provision not only for his mother's support and maintenance following her husband's death but, also, to afford her a means of supporting and maintaining Robert,

then seventeen years of age. Charles Shepherd had been advised by competent counsel that he may have become the owner in fee of the entire farm upon his father's death for the reason that he was the only child who not only survived his father but, also, had attained his majority. With this possibility existing, Charles decided to, and did, execute the deed conveying a life interest in the farm to his mother, with the remainder in equal one-half interests to his brother Robert and himself. The evidence does not admit of the construction that Charles used any undue influence to persuade Robert to join in the execution of the deed. Nor is there any evidence that the attorney, who prepared the deed and in whose office the transaction took place, attempted to induce Robert to join in the conveyance against his will. In short, there is no element of misrepresentation or undue influence attending the execution of the challenged deed of June 8, 1942. This being so, the question remains, did Robert Shepherd, under the circumstances described, have the right to repudiate and disaffirm the deed of December 3, 1946, or was he barred from rescinding?

A deed executed by a minor is not void but voidable, only, and becomes valid and effective if ratified by him after he attains his majority. (*Schlig* v. *Spear,* 345 Ill. 219; *Barlow* v. *Robinson,* 174 Ill. 317.) A minor may disaffirm a contract made by him during minority within a reasonable time after reaching his majority or he may, by acts recognizing the contract after becoming of legal age, ratify it. (*Rubin* v. *Strandberg,* 288 Ill. 64.) In particular, if a minor, after becoming of age, does any distinct and decisive act clearly showing an intention to affirm a deed made by him during his minority he will be deemed to have ratified the deed and cannot thereafter avoid it. (*Schlig* v. *Spear,* 345 Ill. 219; *Rubin* v. *Strandberg,* 288 Ill. 64.) A ratification made by a person of sound mind, upon arriving at his majority, is valid, if untainted with fraud or undue influence, although the party making it is

not at the time aware that it bound him in law.  In other words, it is not necessary to a binding ratification that the party sought to be charged knew at the time of the act that he had the legal right to avoid the contract.  (*Rubin v. Strandberg*, 288 Ill. 64.)  "Ignorance of the party ratifying that his infancy gives him a legal defense is generally and rightly held to be immaterial in the more recent decisions."  1 Williston on Contracts, rev. ed., sec. 239.

When Robert Shepherd became twenty-one years of age on May 2, 1946, he, his wife, and their young child, were living with his mother in the family homestead and he was working on the farm for and receiving compensation from his mother of one hundred dollars per month and, also, board and room for himself and his family.  At this time, his mother was in exclusive possession and control of the farm, conformably to the deed of June 8, 1942.  Robert continued to live in his mother's household and to work for her after attaining his majority.  He did not leave the farm until late June, 1946, nearly two months after his twenty-first birthday.

Analogous, if not parallel situations were presented in *Schlig v. Spear*, 345 Ill. 219, and *Rubin v. Strandberg*, 288 Ill. 64.  In the case first cited, Irving Schlig, on July 13, 1925, then twenty years of age, executed and delivered his warranty deed, conveying his interest in an improved parcel of real estate, to Spear.  Schlig became twenty-one years of age on July 19, 1925.  Two days later, on July 21, Schlig, accompanied by Spear, called on one of the tenants for the purposes of collecting the July rent and introducing Spear as the new owner of the property.  Failing to gain admission, Schlig and Spear departed.  Spear returned later and presented the tenant a receipt for the July rent, the receipt being in Schlig's handwriting except that it was signed by Spear, and carried, on the reverse side, in Schlig's handwriting, "This is Sam Spear, your new landlord—Irving Schlig."  Thereupon, the tenant paid Spear the rent

for July and, on August 21, Schlig called upon the tenant and informed him that he had been authorized by Spear to collect the August rent because of Spear's absence from Chicago. The tenant paid the rent to Schlig and the latter received five dollars as compensation for making the collection. Schlig died on August 28, and, thereafter, his parents brought an action seeking the cancellation of the deed of July 13, 1925. Sustaining the decree dismissing plaintiffs' complaint, this court observed: "Schlig's acts with reference to his introduction of Spear to the tenant in possession of the premises in July, 1925, and his collecting the August rent from the tenant as agent for appellee [Spear] and receiving five dollars compensation therefor, were sufficient, in law, to constitute a ratification of the deed to appellee."

In *Rubin* v. *Strandberg*, 288 Ill. 64, David M. Rubin and his two partners, on March 4, 1915, contracted to sell to Erik P. Strandberg, Jr., a minor, twenty years of age, an unimproved parcel of real estate, in Chicago, for $6600. An initial cash payment of $1000 was made and, also, monthly payments of $150 each, with interest, to and including the payment due December 4, 1915. Strandberg attained his majority on October 7, 1915. The payments made in November and December were thus made after he became of age. Strandberg caused the contract to be recorded on January 3, 1916. No payment was made in January, 1916, and, on February 4, Strandberg tendered back to the owners the contract, together with a quitclaim deed conveying their interest to them, and demanded that they pay back to him the money paid under the contract. This, they refused to do. In deciding the issues in the ensuing litigation against Strandberg, this court said, "He had no reason for disaffirming it except that he had changed his mind. * * * He simply concluded that he had made an unprofitable contract and sought to disaffirm solely because he was a minor when it was made. * * * The payments in November and December, 1915, evidenced his in-

tention to comply with his contract and were a ratification of it unless, as contended, he did not then know the law authorized him to disaffirm it. In our opinion defendant's act after becoming of age must be regarded as done in the light of knowledge of his legal right to disaffirm; that he was presumed to know the law, and cannot be heard to say that he was ignorant of his legal right in that respect and performed the alleged acts of ratification in ignorance of that right." Here, as in the *Strandberg case*, the minor was not induced to enter into the transaction by fraud and misrepresentation, and his right to disaffirm the deed rests largely upon whether he ratified it after becoming of age.

The chancellor also found that Robert Shepherd did not repudiate the deed promptly after becoming twenty-one years of age. The right of a minor to disaffirm must be exercised within a reasonable time after reaching his majority. Some States have adopted, as a maximum reasonable time, arbitrary periods, for example, the time fixed by the Statute of Limitations, when ratification is conclusively presumed, but what is a reasonable time is generally a question of fact dependent upon the circumstances of the particular case. (43 C.J.S., Infants, secs. 40, 75.) When Robert attained his majority, his mother was in the exclusive possession and control of the farm and Robert was in her employ. This was the setting when Charles Shepherd, on June 21, 1946, made his will, devising his interest in the farm to his wife for life, with the remainder to Robert's young son. The evidence warrants the conclusion that this disposition of Charles's interest in the farm was made in the belief that the family settlement would remain undisturbed and that his mother had the right to stay on and operate the farm so long as she lived. When Charles died on August 30, 1946, the rights of the other interested parties became fixed. Robert took no affirmative action to

disaffirm until December 3, seven months after attaining his majority. During this period, his mother had no right to possession of the farm except by virtue of the deed of June 8, 1942. Robert recognized and acquiesced in her control and management of the land and ratified her action by working as her employee on the farm after May 2, 1946, his twenty-first birthday.

A similar situation was presented in *Jones* v. *Jones,* 46 Iowa, 466, where three of the five children of John W. Jones, on April 21, 1873, executed a written release of all their rights and interests in their father's estate, should he die without making a will, in return for property transferred to them by him. One of the three children, L. H. Jones, was then a minor and did not attain his majority until August, 1873. The father died intestate on December 2, 1873. Six months after becoming of age, L. H. Jones sought to disaffirm the release executed during his minority. The Supreme Court of Iowa held that his disaffirmance was not made within a reasonable time, observing, "The defendant took no steps looking to a disaffirmance during the lifetime of his father, although four months intervened between his majority and such death. If he had disaffirmed the contract during such time his father might have made some disposition of his property by will other and different from that provided by statute, in case no such will was made. * * * It would seem, therefore, that there is much force in the thought that if the contract was disaffirmed at all, it should have preceded the death of said Jones." The quoted observations are singularly appropriate in the present case. Had Robert disaffirmed the deed promptly after becoming twenty-one years of age, his brother might have made a different disposition of his one-half interest in the farm and it may well be that he would not have devised his entire interest in fee to Robert's infant son nor have disinherited his mother. A consideration of

all the facts and circumstances impels the conclusion that the chancellor correctly decided a reasonable time for disaffirmance had expired prior to December 3, 1946.

The deed of June 8, 1942, vested title to an undivided one-half of the real estate in Robert Shepherd immediately, rendering unnecessary attainment of the age of twenty-one years as a condition precedent to acquiring title and irrespective of any possible adverse interpretation of the will requiring that he reach his majority before the death of his father, the life tenant. Had he not executed the deed, Charles, irrespective of the eventual vesting of the title, would have been entitled to complete and exclusive possession of the farm until Robert became twenty-one years old, and the possibility, real or remote, existed that Robert might not become entitled to a one-half interest in the land when, as and if he should become twenty-one years of age. In the meantime, the deed enabled his mother to operate the farm and to not only furnish herself with support and maintenance but to provide his necessary support and maintenance while he resided with her during his minority.

In *Johnson* v. *Northwestern Mutual Life Ins. Co.* 56 Minn. 365, the insurer issued a twenty-year endowment insurance policy upon a minor's life, payable to himself. Upon attaining his majority, the insured demanded repayment of the premiums paid by him during his minority. Holding that he could recover only the current cash "surrender" value of the policy, the court said, "True, the plaintiff has received no money, and the defendant has paid none to the plaintiff; but the life of the former was insured for four years, and if he had died during that time the defendant would have had to pay the amount of the policy to his estate. The defendant carried the risk all that time, and this is the essence of the contract of insurance." Similarly, Robert Shepherd, while a minor, received very real and valuable benefits from the deed. Among the benefits so received was the vesting forthwith in himself of an un-

assailable title to one-half of the property which would have passed to his heirs-at-law in the event he died under the age of twenty-one years or if the will of his grandfather were construed adversely to him.

The situation presented is that of a minor who, for all practical purposes, recognized the life interest of his mother in the property involved when he continued in her employment after becoming twenty-one years of age, thereby ratifying the deed; did not disaffirm within a reasonable time, considering the facts and circumstances described, particularly when the evidence discloses that he suggested to his mother she rent the property to a tenant and, four months before disaffirmance, requested his sister-in-law to join with him in asserting his alleged right to rescind, and, in addition, received substantial benefits under the deed which cannot be returned because of the passing of time. The fact that Robert may not have known of his rights under the law when he became twenty-one is immaterial. It is his actual inclination and desire to abide by the deed, apart from his legal rights, which control. The privilege of minority, it has frequently been stated, is to be used as a shield and not as a sword. A minor's right to disaffirm upon coming of age, like the right to disaffirm in any other case, should be exercised with some regard to the rights of others, certainly with as much regard to those rights as is fairly consistent with adequate protection of the rights of the minor himself. (*Goodnow* v. *Empire Lumber Co.* 31 Minn. 468.) The equities are clearly with the mother rather than the son in the present case.

Plaintiffs place much reliance, however, upon *Swiney* v. *Womack*, 343 Ill. 278. In that case, the evidence disclosed that undue advantage was taken of a minor of low mentality who was induced to enter into unconscionable contracts. The charge was made and the proof disclosed that a deed, contracts and notes were obtained from a minor mentally incompetent to transact business, by fraud and

undue influence by persons occupying a fiduciary relationship to him. Under these circumstances, this court affirmed a decree finding that the minor's acts were not legally ratified, invoking the rule that, in order to ratify a contract made during minority, the act relied upon as a ratification must be performed with full knowledge of its consequences and with an express intent of ratifying what is known to be voidable, and, where the same lack of knowledge exists at the time of the alleged ratification as existed at the time of the execution of the original contract or deed, the ratification is a part of the original transaction and is ineffectual. The factual situation in *Swiney* v. *Womack* is far from parallel with the facts in this case, which resemble much more closely the facts in *Schlig* v. *Spear,* 345 Ill. 219, and *Rubin* v. *Strandberg,* 288 Ill. 64. As previously observed, the applicable rule is that it is unnecessary to a binding ratification that the party sought to be charged knew at the time he performed the acts of ratification that the law authorized him to disaffirm the contract. *Rubin* v. *Strandberg,* 288 Ill. 64.

Our conclusion that Robert Shepherd's attempted disaffirmance of the deed of June 8, 1942, was ineffective renders unnecessary a determination of whether title to an undivided one-half of the farm vested in him upon attaining the age of twenty-one years, conformably to his grandfather's will, for the adequate reason that, irrespective of the will, he acquired the identical interest in the farm by virtue of the deed of June 8, 1942, executed by his brother, Charles, and himself, conveying a life estate to their mother with the remainder in undivided equal shares in themselves.

The decree of the circuit court of Sangamon County is right, and it is affirmed.

*Decree affirmed.*