FIRST DIVISION

December 5, 2005

No. 1-04-2411

ANTONIO VILLALOBOS, as Next Friend and 
)    Appeal from the

Father of Hilda Villalobos, a Minor, ) Circuit Court of

) Cook County, Illinois
.

Plaintiff-Appellant,
 ) 

) 

v. )    No. 01 L 4963

)

CICERO SCHOOL DISTRICT 99 and )

GLORIA KNOWLES, ) Honorable

)    David G. Lichtenstein,

Defendants-Appellees.
 ) Judge Presiding.

)    

JUSTICE GORDON delivered the opinion of the court:

On April 7, 2001, Antonio Villalobos (Antonio), individually and as next friend and father of Hilda Villalobos (Hilda), filed a complaint against defendants Cicero School District 99 (Cicero School District) and Gloria Knowles, to recover damages for injuries sustained in an automobile collision.  Antonio's claims were dismissed because they were brought after the statute of limitations had run and are not part of this appeal.  Defendants moved for summary judgment as to Hilda's claims, alleging that Hilda's parents, Antonio and Maria, signed a document which released them from liability.  The circuit court granted defendants' motion and plaintiff appealed.  For the reasons that follow, we reverse and remand.

  BACKGROUND

On May 12, 1999, a collision occurred between a vehicle driven by Antonio and a school bus driven by Knowles and owned by Cicero School District.  Hilda, who was 15 years old at the time, was a passenger in Antonio's vehicle.  She sustained lacerations to her head and face as well as a fractured collarbone.  Her lacerations required 20 staples and resulted in some scarring.

At the time of the accident, Antonio was insured by Allstate Insurance Company (Allstate) and the defendants were insured by Gallagher Basset.  Antonio's Allstate insurance policy contained a family exclusion, which meant that any claim Hilda had against him would be covered by his uninsured motorist coverage.  The two companies agreed that Antonio and Knowles were equally at fault for the accident, and Gallagher Basset therefore agreed to reimburse Allstate for 50% of any medical payments advanced and 50% of the property damage claims.  Initially after the accident, Allstate paid $4,304.10 in medical bills submitted by Hilda. 

In June of 2000, Allstate adjuster Shirley Smith discovered that Hilda's claims had not been resolved.  On August 2, 2000, Smith contacted Antonio and told him that Hilda was entitled to compensation for her injuries.  Antonio informed Smith that since he and his family were leaving for Mexico in a few days he wanted to resolve the matter as quickly as possible.  Antonio and his wife Maria then described Hilda's scars to Smith over the phone.  It does not appear that Hilda's collarbone fracture was discussed at that time.  Smith informed Antonio that she would do her best to expedite the claim.  After the phone conversation, Smith estimated Hilda's claim to be worth $3,000 to $5,000, and she submitted that figure to her superiors at Allstate for authorization.

The next day, August 3, 2000, Smith called Antonio again and explained that without seeing Hilda's scars the evaluation might not be accurate.  Antonio then informed Smith that Hilda was actually already in Mexico and would not be back until June of 2001.  Smith then, apparently unaware of the tolling effect of Hilda's minority, incorrectly informed Antonio that the statute of limitations would run on any claim Hilda might have against defendants before that date.  Antonio stated that he was willing to take the risk of having an inaccurate and conservative valuation of Hilda's claim because he wanted the extra money for his daughter while she was in Mexico.  At that time, Smith made an offer of $3,000, which Antonio accepted.

On August 4, 2000, Antonio and Maria met Smith at an Allstate facility.  Smith tendered a $3,000 Allstate check to Antonio and Maria, and they signed two documents.  The first document applied specifically to Allstate and stated as follows:

"RECEIPT AND RELEASE UNDER UNINSURED MOTORIST INSURANCE –COVERAGE SS SUBROGATION AGREEMENT

1.  In consideration of the payment of 
One Thousand Five Hundred Dollars
, (
$1,500.00
) paid by Allstate, the receipt of which is hereby acknowledged, the undersigned hereby forever releases and discharges Allstate from any and all liability and from any and all contractual obligations whatsoever under the coverage designated above for Policy No.
 062144358
 issued to 
Antonio and Maria Villalobos as Parents and Guardians of Hilda Villalobos
 by Allstate, and arising out of bodily injuries sustained by Hilda Villalobos due to an accident on or about the 
12th
 day of 
May
, 
1999
, at or near 
Cicero, il.
"

The second document applied to the defendants:

"PARENT'S RELEASE & INDEMNITY AGREEMENT

In consideration of the payment, to the undersigned, of the sum of
 One Thousand Five Hundred Dollars ($1500.00)
 The receipt of which is hereby acknowledged, the undersigned parent (s) and guardian (s) of 
Hilda Villalobos
, a minor, does forever release, discharge and covenant to and to hold harmless,
 Gloria Knowles, Cicero Public Schools, Gallagher Bassett Services, Inc.
, and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, administrators, executors, successors and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, belonging to the said minor or to the undersigned arising out of any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damage, loss or damages of any kind sustained or that may hereafter be sustained by the said minor or to the undersigned, in consequence of an accident that occurred on or about the 
12th
 of 
May
, 
1999 
at or near, 
Cicero, Il.

* * *

To procure the payment of the sum, 
I/WE
 hereby declare: that no representations about the nature of the extent of the said injuries, disabilities or damages made by any physician, attorney or agent of any party released, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties released have induced ME/US to make this release and indemnity agreement."

Smith testified by way of deposition that at the August 4, 2000, meeting with Antonio and Maria, she explained the purpose and effect of the releases in detail.  She stated that she explained why there were two releases and why Allstate was having them sign a release for Gallagher Basset and defendants.  She further stated that she explained the "finality of signing" the releases and that Antonio and Maria "seemed to have a firm understanding" of the documents.

Antonio testified in his deposition with regard to his meeting with Smith and the signing of the releases as follows:

"Q.  Were you ever told whether the $3,000 was being paid to you under a provision of your insurance policy or someone else's insurance policy?

A.  She never told me – I was never told anything.

Q.  Were you told by anyone at Allstate that this check was all you would be able to receive, that by taking this check, you were finally releasing any and all claims against the defendant, Gloria Knowles?

A.  No, they never told me anything.

Q.  Did the woman that you met with in the cafeteria ask you if you understood what you were signing?

A.  No.  She just gave me the copy to sign to prove that I was receiving the check.

Q.  Is that what she told you, that by signing, you were just signing to show you received the check? 

A. Yes. She said the same thing to my wife, to bring in my wife so she would sign."

Antonio further stated that the meeting with Smith lasted approximately two minutes.

On April 27, 2001, Antonio, individually and on behalf of Hilda, filed a four-count complaint against defendants.  Count I of the complaint was directed against Cicero School District and sought recovery for injuries to Antonio.  Count II made the same allegations against Knowles.  Counts III and IV were brought on behalf of Hilda and were directed against Cicero School District and Knowles, respectively.  On August 16, 2001, defendants filed their answer to plaintiffs' complaint.  Defendants did not answer counts I and II as they had prepared a motion to dismiss those claims because they were brought after the statute of limitations had run on Antonio's claims.  As noted, the circuit court did, in fact, dismiss counts I and II on that basis.  With regard to Hilda's claims in counts III and IV, defendants' answer simply denied any negligence.  

In February of 2002, defendants became aware of the releases signed by Hilda's parents when Antonio's attorney, as counterdefendant, sent them a copy of the "Parent's Release and Indemnity Agreement."  Defendants thereafter, on July 31, 2002, filed their first of three motions for summary judgment on the theory that the release unambiguously resolved the case in their favor.  Defendants noted in their motion that they were pursuing summary judgment on the basis of section 2-1005(b) of the Code of Civil Procedure (735 ILCS 5/2-1005(b) (West 2004)) rather than dismissal pursuant to section 2-619(a)(6) (735 ILCS 5/2-619(a)(6) (West 2004)) because they had already filed an answer to the complaint.  Hilda responded to this motion by arguing that the release applied only to her parents and that it was ambiguous.  

The circuit court heard the motion and found that the release was facially "suspect" in that Antonio's own insurer made payment to him while purporting to release the defendants and their insurance company.  The court then ordered the parties to investigate the circumstances surrounding the negotiation and execution of the release in question.  Subsequent to this order, the parties conducted discovery with a focus on the circumstances of the releases.  Most relevant of this discovery were the depositions of Antonio and Smith, which, as noted, addressed the circumstances behind Antonio's and Maria's signing of the releases.

On August 15, 2003, defendants filed their second motion for summary judgment.  In this motion, defendants again argued that the releases entitled them to judgment.  However, defendants additionally argued that the circumstances surrounding the execution of the releases unambiguously showed that Antonio and Maria understood what they were signing.  Included with defendants' motion were court orders, a copy of the complaint, copies of the releases, the deposition transcripts of Antonio, Maria, and Smith, as well as Allstate's response to plaintiff's motion to compel.

In response to this motion, Hilda argued that the releases were improperly obtained and that Antonio did not understand what he was signing.  Hilda further posited that her contentions raised questions of fact that precluded summary judgment.  Included with her response were court orders, deposition transcripts, copies of the releases, and copies of notes taken by Smith that documented her contacts with Antonio.

On October 30, 2003, the judge to whom the case had been transferred denied defendants' motion without prejudice.  The court's order did not explain the reasoning behind the denial of the motion.  The transcript of the court proceedings from this day is not part of the record on appeal; however, both parties state in their briefs that judge explained in open court that he could not reach the merits of defendants' motion for summary judgment because defendants had not filed the necessary underlying pleading by asserting the release as an affirmative defense.

On November 25, 2003, after obtaining leave of court, defendants filed their affirmative defense, in which they asserted the release as a bar to Hilda's action.  Hilda's reply to defendants' affirmative defense stated in relevant part:

"Although the Plaintiff, HILDA VILLALOBOS, a minor, admits that a 'PARENTS RELEASE AND INDEMNIFICATION AGREEMENT' was signed by her parents, ANTONIO VILLALOBOS and MARIA VILLALOBOS, in this cause, she denies that the subject 'Release' is of any legal effect as it was obtained through the use of fraud and/or misrepresentation under suspect circumstances and led to an unconscionable result."

On December 3, 2003, defendants moved for summary judgment pursuant to section 2-1005(b) (735 ILCS 5/2-1005(b) (West 2004)) a third time.  This third motion for summary judgment was essentially identical to the defendants' second motion for summary judgment and had essentially the same documents attached, including deposition transcripts.  As such, Hilda opted to stand on her response to the defendants' second motion.

On January 13, 2004, the circuit court issued a written order which granted defendants' motion and dismissed Hilda's case with prejudice.  The order started by noting that the cause was being brought on a "motion for summary judgment" and then stated that the court had "considered the motion and all pleadings, papers, depositions and exhibits proffered."  At that point, the following footnote was inserted:

"Respondent filed no response to the instant motion, but the court has considered the previous response to the prior motion.  The record is substantially different at this juncture than when the motion was first heard.  There is now a well-pleaded defense to which nothing more than conclusionary averments have been filed by way of reply.  In brief, respondent's approach is a plea to be allowed to argue to a lay jury not on the basis of articulated facts as to either 'fraud' or 'unconscionability' but rather on the basis of sympathy, conjecture and speculation.  This, for sound reasons of 'due process' the law does not allow."

The court then stated:

"Movants seeks [
sic
] summary disposition of the cause on the basis of a well pleaded affirmative defense (735 ILCS 5/2-619(a)(6)) of release.  Respondent plaintiff admits the existence of the release agreement, but in an ineffectively pleaded reply (called Plaintiff's Answer to Defendants' Affirmative Defense), asserts in wholly conclusionary terms that i.) 'It was obtained through the use of fraud' and ii.) That it 'led to an unconscionable result.'  On the current state of the record the asserted defense is sufficient to warrant the summary disposition sought, and there are no genuine issues of specific material fact (as opposed to mere argument) to present to a fact-finder, here a jury."

Soon thereafter, Hilda filed a motion to reconsider.  The court heard oral arguments on April 28, 2004, and denied the motion on July 21, 2004. 

Hilda makes two basic arguments on appeal.  First, she argues that the circuit court erred in granting the defendants' motion for summary judgment because there were genuine issues of material fact as to whether the releases were improperly obtained.  In this regard, Hilda contends that there were factual questions as to whether Antonio understood the releases before signing them, whether the haste with which the releases were obtained cast such suspicion on them that summary judgment would be inappropriate, and whether Smith's misrepresentation as to the applicable statute of limitations induced Antonio to sign the releases.  Second, Hilda argues that the circuit court erroneously considered defendants' summary judgment motion as one for involuntary dismissal.  In this regard, Hilda contends that the circuit court erroneously looked only to the pleadings when the summary judgment statute directs the court to look additionally to depositions, admissions on file, and affidavits, if any, to determine whether a genuine issues of material fact exists. 

Defendants, on the other hand, argue that the circuit court properly enforced the release as it was written.  In this regard, they argue that there was no evidence of fraud in the execution or in the inducement, that there was no evidence of duress, and that the settlement amount was not unconscionable.  Defendants next argue that the circuit court properly considered their motion as one for summary judgment despite the indications to the contrary.  Defendants contend that an affirmative defense is properly dispositive in a summary judgment motion.  In the alternative, defendants argue that the circuit court would also have been correct in ruling for them on the basis of section 2-619(a)(6) (735 ILCS 2-619(a)(6) (West 2004)), as an affirmative defense is also a proper basis for judgment under that statute.  Defendants finally assert that regardless of the trial court's reason for its decision, we can affirm the result on any basis found in the record.

Oral arguments were heard before this court, at which time we 
raised the question of whether Hilda's minority affected the enforceability of the releases purportedly signed on her behalf by her parents.  We then allowed the parties to file supplemental briefs on this question.  In her supplemental brief, Hilda maintains that her parents had no legal right to settle her claims without court approval.  Defendants concede that court approval was required for any settlement of Hilda's claims, but maintain that Hilda has since ratified the release by failing to disaffirm it.  We find that the issues discussed in the foregoing supplemental briefs are dispositive of this appeal.

 ANALYSIS

Under Illinois law, a minor involved in litigation is a ward of the court and the court has "a duty and broad discretion to protect the minor's interests."  
Wreglesworth v. Arctco, Inc.
, 316 Ill. App. 3d 1023, 1026, 738 N.E.2d 964, 968 (2000);  
Mastroianni v. Curtis
, 78 Ill. App. 3d 97, 100, 397 N.E.2d 56, 58 
(1979).  Further, it is the public policy of this state that the rights of minors be guarded carefully.  
Mastroianni
, 78 Ill. App. 3d at 100, 397 N.E.2d at 58
; 
Ott v. Little Company of Mary Hospital
, 273 Ill. App. 3d 563, 570, 652 N.E.2d 1051, 1056 (1995).
  This policy is reflected in the statutory requirement that the court approve or reject any settlement agreement proposed on a minor's behalf. See 755 ILCS 5/19-8 (West 2004) ("By leave of court *** a representative may compound or compromise any claim or any interest of the ward *** or any interest in personal estate for other claims or personal estate upon such terms as the court directs"); 
Mastroianni
, 78 Ill. App. 3d at 100
, 397 N.E.2d at 58
; 
Ott
, 273 Ill. App. 3d at 571, 652 N.E.2d at 1056
; 
Smith v. Smith
, 358 Ill. App. 3d 790, 792-93, 832 N.E.2d 960, 962 (2005).
  In accordance with this provision, Illinois courts have held that neither a next friend nor a court-appointed guardian can approve a settlement of a minor's claim without court approval.  
Ott
, 273 Ill. App. 3d at 571
, 652 N.E.2d at 1057
, citing 
Leonard C. Arnold, Ltd. v. Norther Trust Co.
, 139 Ill. App. 3d 683, 487 N.E.2d 668 (1985); 
Kingsbury v. Buckner
, 134 U.S. 650, 680, 33 L. Ed. 1047, 1059, 
10 S. Ct. 638, 648 (1890). "Similarly, a parent has no legal right, by virtue of the parental relationship, to settle a minor's cause of action; and court review and approval of a settlement reached be a parent also is mandatory."  
Ott
, 273 Ill. App. 3d at 571
, 652 N.E.2d at 1057
, citing 
Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Haley
, 170 Ill. 610, 48 N.E. 920 (1897), and 
Mastroianni
, 78 Ill. App. 3d at 100, 397 N.E.2d at 58
.  Therefore, "any settlement of a minor's claim is unenforceable unless and until there has been approval by the probate court."  
Wreglesworth
, 316 Ill. App. 3d at 1028, 738 N.E.2d at 969.

Defendants contend that although court approval was not obtained for the releases signed by Hilda's parents, she is nevertheless bound by the releases because she has failed to disaffirm them.  In support of this contention, defendants cite 
Dixon National Bank of Dixon v. Neal
, 5 Ill. 2d 328, 125 N.E.2d 463 (1955), and 
Shepherd v. Shepherd
, 408 Ill. 364, 97 N.E.2d 273 (1951).  Specifically, defendants rely on the general rules cited in these cases with regard to how a minor can either disaffirm or ratify a contract once becoming an adult.  See 
Dixon
, 5 Ill. 2d at 336, 125 N.E.2d at 467
 ("A minor may disaffirm a contract made by him during minority within a reasonable time after reaching his majority or, he may by acts recognizing the contract after becoming of legal age, ratify it. [Citation.]  Similarly it is held that an executed contract voidable on the ground of infancy is deemed to be ratified by the failure of the former infant to disaffirm it within a reasonable time after reaching majority"); 
Shepherd
, 408 Ill. at 375-78, 97 N.E.2d at 279-80
 ("A deed executed by a minor is not void but voidable, only, and becomes valid and effective if ratified by him after he attains his majority. [Citations.]  A minor may disaffirm a contract made by him during minority within a reasonable time after reaching his majority, or he may, by acts recognizing the contract after becoming of legal age, ratify it. *** The right of a minor to disaffirm must be exercised within a reasonable time after reaching his majority").  

Defendants further contend that the instant lawsuit, from which this appeal stems,
 cannot be considered a disaffirmance of the releases by Hilda
 because the suit was brought by Antonio as her father and next friend, and not by Hilda individually.
  In support, defendants cite two cases where minors were found to have disaffirmed contracts by their actions.  See 
Iverson v. Scholl, Inc.
, 136 Ill. App. 3d 962, 483 N.E.2d 893 (1985); 
Terrace Co. v. Calhoun
, 37 Ill. App. 3d 757, 347 N.E.2d 315 (1976).  In 
Iverson
, the court found that the plaintiff's "filing of suit [was] sufficient evidence of [her] desire to disaffirm" her discharge of debt owed by insurer made when she was a minor.  
Iverson
, 136 Ill. App. 3d at 970, 483 N.E.2d at 899
.  
Similarly, in 
Terrace
, the court found that the defendant disaffirmed a note made while a minor when, at the age of 19, she filed a motion to open the judgment.  
Terrace
, 37 Ill. App. 3d at 761-62, 347 N.E.2d at 319
.  

We find defendants' arguments unpersuasive.  First of all, the cases cited by defendants all involve contracts where the minors where parties to the original contract.  See 
Dixon
, 5 Ill. 2d at 329-30, 125 N.E.2d at 464
 (where minor was a party to a contract for adoption); 
Shepherd
, 408 Ill. at 375, 97 N.E.2d at 279
 (where minor executed a deed); 
Iverson
, 136 Ill. App. 3d at 970, 483 N.E.2d at 899
 (where minor, as a beneficiary of an insurance policy, discharged a debt); 
Terrace
, 37 Ill. App. 3d at 758, 347 N.E.2d at 317
 (where minor signed a note).   In contrast, here, Hilda was not a direct party to the release agreements; rather, it was her parents who purported to sign them on her behalf.  Thus, Hilda is not in the same position as minors who were actual signatories, like those 
involved in the cases cited by defendants. 

Rather, the instant case is more analogous to the cases cited by Hilda.  For instance, in 
Smith
, a minor was injured while riding as a passenger in her mother's automobile.  
Smith
, 358 Ill. App. 3d at 792, 832 N.E.2d at 962
.  
The mother signed a release and trust agreement in the amount of $1,000, releasing and discharging her insurance company from all claims resulting from the accident.  
Smith
, 358 Ill. App. 3d at 792, 832 N.E.2d at 962
.  Later, the father 
initiated a suit as next friend of the minor
, alleging that the mother's negligence caused the minor's injuries.  The court found that the mother's settlement of her daughter's claims was unenforceable because it was not approved by the probate court in accordance with Illinois law.  
Smith
, 358 Ill. App. 3d at 793, 832 N.E.2d at 962
.
  

Similarly, in 
Mastroianni
, the plaintiff filed suit upon attaining the age of majority  to recover damages sustained in an automobile accident when she was 2 ½ years old.  
Mastroianni
, 78 Ill. App. 3d at 98-99, 397 N.E.2d at 57-58
. 
  Her parents had signed a release and indemnity agreement approximately two years after the accident and plaintiff contended that it was ineffective because it was never approved by the court.  
Mastroianni
, 78 Ill. App. 3d at 99, 397 N.E.2d at 58
. 
 The court held that court approval is necessary for the settlement of a minor's claims and remanded the case to resolve, among other things, whether such approval was obtained for the release the parents signed.  
Mastroianni
, 78 Ill. App. 3d at 100, 101-02, 397 N.E.2d at 58
-59.

Furthermore, although a minor who enters into a contract may disaffirm or ratify it upon reaching adulthood (
Dixon
, 5 Ill. 2d at 336, 
125 N.E.2d at 467
), defendants point us to no case where a minor was found to have ratified a contract executed by a parent on his behalf.  We note that the cases that have addressed the effect of a parent's execution of a release on behalf of a minor have stated that such releases are "unenforceable" (See 
Wreglesworth
, 316 Ill. App. 3d at 1028, 738 N.E.2d at 969 
(using term "unenforceable"); 
Smith
, 358 Ill. App. 3d at 793, 832 N.E.2d at 963 
(quoting 
Wreglesworth
 and using "unenforceable"); see also 
Mastroianni
, 78 Ill. App. 3d at 99, 397 N.E.2d at 58
 (noting that court approval is required before guardian's act is binding
));  
these cases do not call such settlements "voidable" as is the case in contracts entered into directly by minors themselves (
Shepherd
, 408 Ill. at 375
, 97 N.E.2d at 279
; 
Terrace
, 37 Ill. App. 3d at 761, 347 N.E.2d at 319
).  The term "unenforceable" connotes a finality more akin to "void" than to "voidable."  Thus, we are inclined to think that disaffirmance and ratification do not play the same role in cases, such as this, where the minor is not a party to the original contract but, rather, is purportedly represented by his parents. 
 However, even if we were to apply the same rules of disaffirmance and ratification to these releases executed by Hilda's parents, defendants' contention still fails.

Hilda has clearly done no affirmative act that could be considered a ratification of the releases.  Consequently, defendants maintain that Hilda has ratified the releases simply by failing to affirmatively repudiate them.  In this regard, defendants contend
 that the instant lawsuit, initiated by Antonio as Hilda's father and next friend, cannot act as a disaffirmance.  However, although the cases cited by defendants make clear that a minor's own initiation of an action or motion challenging a contract upon reaching majority can act as a disaffirmance (see 
Iverson
, 136 Ill. App. 3d at 970, 483 N.E.2d at 899
; 
Terrace
, 37 Ill. App. 3d at 761-62, 347 N.E.2d at 319
)
, neither case supports defendants' proposition that a suit filed by a minor's father as next friend cannot similarly be considered a disaffirmance by the minor.
  

Hilda reached the age of majority less than a year after the suit was filed by her father, and she was nearly 20 years old when the circuit court issued its order granting defendants motion for summary judgment.  Although Hilda did not bring or maintain the suit individually, the contracts that defendants argue she has failed to disaffirm were already in the process of being challenged when she became an adult.  Thus, it would not seem that any further act of disaffirmance by Hilda was necessary.  Additionally, we note that a parent, as next friend of a child, has " 'power to claim and pursue the rights of the infant [but is] powerless to yield or cede it to others.' "  
Mastroianni
, 78 Ill. App. 3d at 100, 397 N.E.2d at 58
, quoting 
Haley
, 170 Ill. at 613-14, 48 N.E.2d at 922
.  
Even though the issue of Hilda's minority was not formally raised until the case came before this court, we believe the fact that the releases had been challenged on the bases raised below, namely, that Antonio did not understand them and that they were obtained through fraud and with undue haste, would suffice to show disaffirmance.  Moreover, in opposition to defendants' first motion for summary judgment, 
Hilda argued that the releases did not apply to her because she did not sign them and they only bound Antonio and Maria as the "undersigned."  Although these assertions were originally made while Hilda was a minor, they persisted into the time of her majority.  Moreover, the rule is clear that a minor can disaffirm a contract before reaching the age of majority.  See 
Collins v. Peters Real Estate Improvement Corp.
, 252 Ill. App. 348, 349 (1929); 
Logan County Bank v. Taylor
, 11 Ill. App. 3d 120, 121, 295 N.E.2d 743 (1973).  Accordingly, defendants' arguments fail.

  Conclusion

For the foregoing reasons, we reverse and remand for trial of the issues.

Reversed and remanded.

CAHILL, P.J., and Burke, J., concur.