In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 13-2434

ANDREW GOESEL, *et al.*,

*Plaintiffs,*

*v.*

BOLEY INTERNATIONAL (H.K.) LTD., *et al.*,

*Defendants-Appellees.*

APPEAL OF: WILLIAMS, BAX & SALTZMAN, P.C.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 4595 — **Milton I. Shadur**, *Judge.*

———————————

No. 13-2818

FORTUNEE MASSUDA,

*Plaintiff-Appellant,*

*v.*

PANDA EXPRESS, INC., *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the

Northern District of Illinois, Eastern Division.
No. 12 C 9683 — **Ronald A. Guzmán**, *Judge.*

———————————

SUBMITTED NOVEMBER 4, 2013 — DECIDED DECEMBER 26, 2013

———————————

Before POSNER, *Circuit Judge*. As motions judge for the week during which motions to seal the settlement agreements in these two appeals were filed, I ordered the motions consolidated and now rule on them.

In *Goesel* the parties agreed to settle a personal injury suit, but because the suit was on behalf of a minor they were required by Local Rule 17.1 of the Northern District of Illinois to obtain the district judge's approval of the settlement. See *Elustra v. Mineo*, 595 F.3d 699, 709–10 (7th Cir. 2010); cf. *Villalobos v. Cicero School District 99*, 841 N.E.2d 87, 93 (Ill. App. 2005). The judge reduced the portion of the settlement payable to the plaintiffs' law firm, thus increasing the amount of money to be received by the plaintiffs, and approved the settlement as revised. The appeal is by the law firm and challenges the judge's modification of the settlement. The parties asked the district judge to seal the settlement and he obliged. Before me is the law firm's motion to maintain under seal documents disclosing the amounts of the settlement and of the lawyers' costs and fees. The firm emphasizes that the parties had agreed to keep the settlement amount secret.

In *Massuda*, a suit for breach of fiduciary duty, the district judge dismissed most of the plaintiff's claims on the ground that they were derivative from claims in a previous suit that the parties had settled. In so ruling the court relied on a re-

dacted copy of the settlement agreement in the earlier suit, filed under seal, that inked out almost all the terms of the settlement other than the names of the parties and the nature of the suit. The defendants want the redacted settlement agreement kept under seal in this court as well.

"Documents that affect the disposition of federal litigation are presumptively open to public view." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); see *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002); *LEAP Systems, Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011). The reason for this right of public access to the judicial record is to enable interested members of the public, including lawyers, journalists, and government officials, to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties. *Nixon v. Warner Communications, Inc.*, *supra*, 435 U.S. at 597–98; *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002); *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000); *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945–46 (7th Cir. 1999); *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993). As Holmes put it, **"**It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884).

The presumption can be rebutted. A litigant is allowed, for example, to conceal trade secrets, and, if there are compelling reasons of personal privacy, to litigate under a pseudonym. See, e.g., *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188 (2d Cir. 2008). And the presumption of public access "applies only to the materials that formed the basis of the parties' dispute and the district court's resolution"; other materials that may have crept into the record are not subject to the presumption. *Baxter International, Inc. v. Abbott Laboratories*, *supra*, 297 F.3d at 548.

But what about concealment of terms in settlement agreements? Settlements are ubiquitous in the legal system, but most settlement agreements never show up in a judicial record and so are not subject to the right of public access. Either the agreement is made before a suit is filed (and so the suit is never filed), or, if after, the parties file a stipulation of dismissal and in that event they're not required to make the agreement a part of the court record. Fed. R. Civ. P. 41(a)(1)(ii); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381–82 (1994); *Jessup v. Luther*, *supra*, 277 F.3d at 928. The parties in *Goesel* didn't have that option, because the local rule cited above (the validity of which is not challenged) required the court's approval for the settlement to be valid.

If though it is part of the judicial record the settlement is made without any court action (approval, disapproval, or approval with modifications as in *Goesel*) there will rarely be a good reason to require that its terms be made public, because making them public would not reveal anything about judicial activity. See *LEAP Systems, Inc. v. MoneyTrax, Inc.*, *su-*

*pra*, 638 F.3d at 220 ("settlement agreements reached without court assistance or intervention will not be treated as 'judicial records' for purposes of the 'right of access' doctrine"); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994). One can imagine exceptions: cases in which the size, large or small, of the settlement can be shown to be the result of judicial doctrines that excessively (or so it might be thought) favor one side in a class of disputes, or of rulings made earlier in the case that by favoring one side or the other influenced the terms of settlement. But for the most part settlement terms are of potential public interest only when judicial approval of the terms is required, or they become an issue in a subsequent lawsuit, or the settlement is sought to be enforced. E.g., *Herrnreiter v. Chicago Housing Authority*, 281 F.3d 634, 636–37 (7th Cir. 2002); *Jessup v. Luther*, *supra*, 277 F.3d at 929–30; *Union Oil Co. v. Leavell*, *supra*, 220 F.3d at 567; *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1015–16 (11th Cir. 1992). In all such cases the presumption of a right of public access to court documents should apply.

The net effects of compelled disclosure of settlement terms are deeply uncertain. It's been argued, on behalf of disclosure, that settlement agreements, which often contain terms going far beyond just a dollar amount, may conceal safety hazards and other matters of acute public concern. Richard A. Zitrin, "The Laudable South Carolina Court Rules Must Be Broadened," 55 *S. Carolina L. Rev.* 883, 887–89 (2004). Usually, however, all that is sought to be concealed is the size of the settlement. Robert Timothy Reagan et al., *Sealed Settlement Agreements in Federal District Court* 1, 8 (Federal Judicial Center 2004). Yet making that information public can be defended as encouraging prelitigation settle-

ments, since they are not open to public scrutiny, and thus as economizing on litigation costs. Also and more important, the more that is known about size (and other terms) of settlements, the easier it should be for prospective litigants to predict the likely outcome of their own litigation, and ability to predict outcome should both foster and simplify settlement. See Scott A. Moss, "Illuminating Secrecy: A New Economic Analysis of Confidential Settlements," 105 *Mich. L. Rev.* 867, 898–903 (2007); Ben Depoorter, "Law in the Shadow of Bargaining: The Feedback Effect of Civil Settlements," 95 *Cornell L. Rev.* 957, 974 (2010). Disclosure of sizes of settlements should also reduce the probability of lopsided settlements—ones that the parties would have recognized were too large or too small had they had information about settlements in similar cases.

So there is an upside to disclosing settlement terms, but also a downside. If parties know that the size of their settlement will become public, their settlement negotiations are likely to become more complicated. See *id*. at 980–83; Note, "Quality, Not Quantity: An Analysis of Confidential Settlements and Litigants' Economic Incentives," 154 *U. Pa. L. Rev.* 433, 456 (2005). The defendant will fear that if the amount is large, making it public will invite more suits against him, while the plaintiff's lawyer will fear that if the amount is small he will find settlement negotiations in his next case more difficult—the defendant in that case will have a greater incentive to resist, hoping to negotiate as good a bargain as he has observed in the settlement agreement that has become public. The plaintiff's lawyer who has agreed to a modest settlement that the court has made public also may fear that future clients, unimpressed by the amount he got in

settlement for a previous client, will desert him for tougher-seeming negotiators.

Yet in the end this to and fro of competing considerations may be of little importance. Depoorter in the article cited above argues that most lawyers who negotiate settlements are experienced and know from their own cases (and by word-of-mouth from other lawyers) what the attainable terms of settlement are likely to be in the class of cases that they handle. So maybe there is little at stake in the decision whether to allow or forbid parties to conceal the size of a settlement.

Against a background of such uncertainty, it's difficult to imagine what arguments or evidence parties wanting to conceal the amount or other terms of their settlement (apart from terms that would reveal trade secrets or seriously compromise personal or institutional privacy or national security) could present to rebut the presumption of public access to judicial records. The parties before me haven't even tried. In neither case have they offered any reason for secrecy except that they have a confidentiality agreement. Obviously that's insufficient, and I could stop there: because there is potential public value to disclosing settlement terms, including amount, parties *have* to give the judge a reason for not disclosing them—and the fact that they don't want to disclose is not a reason. See Arthur R. Miller, "Confidentiality, Protective Orders, and Public Access to the Courts," 105 *Harv. L. Rev.* 427, 492–93 (1991). But I'll trudge on.

In *Goesel* an outsider to the litigation could not evaluate the dispute over the district judge's modification of the settlement without knowing the amount of the settlement (including fees and costs) before and after the modification.

That is information important to future negotiations over attorneys' fees in cases in which the plaintiff is a minor; and no good reason—in fact no reason at all—has been given for thinking that concealment of the information would serve some social purpose.

As for the other case, *Massuda*, there is no indication that the amount of the settlement figured in the district court's decision. Nor is an unredacted copy of the settlement agreement, which would reveal that amount, even in the judicial record in either the district court or this court; as far as I can tell the district judge never saw it. The only issue is whether the redacted agreement, which *is* in the judicial record, should be under seal, as the defendants request. I can't understand why they want that, since almost everything of any possible interest has been redacted, including the size of the settlement. I asked them for an explanation, and their unhelpful response was that they requested the seal "in an abundance of caution" but "do not object to the Seventh Circuit unsealing the redacted document if it decides to do so." Oddest of all, they had included a copy of the redacted settlement agreement in the appendix to their brief on appeal—a public document—thus mooting their request for concealment.

The request in *Goesel* is therefore denied; in *Massuda* it is dismissed.