In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 13-1626

CITY OF GREENVILLE, ILLINOIS, *et al.*,

*Plaintiffs-Appellees*,

*v.*

SYNGENTA CROP PROTECTION, LLC, *et al.*,

*Defendants-Appellees*.

Appeal of:

ENVIRONMENTAL LAW & POLICY CENTER and PRAIRIE RIVERS NETWORK

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 10-cv-188-JPG — **J. Phil Gilbert**, *Judge*.

_____

ARGUED SEPTEMBER 10, 2013 — DECIDED AUGUST 20, 2014

_____

Before WOOD, *Chief Judge*, and EASTERBROOK and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The herbicide atrazine is banned in the European Union but widely used in this nation. The EPA has decided that it is safe; some environmen-

talists deem it unsafe. Various Midwestern municipalities and water boards charged with filtering public drinking supplies brought this suit against Syngenta, the corporate family that manufactures and distributes the chemical. Those claims were settled. The merits are now irrelevant, but during discovery Syngenta produced many documents. Two environmental groups intervened to assert that the public is entitled to see them.

The intervenors want the court to disclose exhibits filed with plaintiffs' response to Syngenta's motion to dismiss. Many contain internal emails and business deliberations that Syngenta wants to keep private. In a flawed attempt to comply with a protective order shielding discovery materials, plaintiffs had filed the response and its exhibits under seal. But the protective order did not apply to materials filed in connection with a dispositive motion. Pointing to this limitation, the district court eventually unsealed 123 of the exhibits, preserving the seal on 242 that are either legitimately confidential or had not been cited in plaintiffs' papers. (Perhaps the court should have unsealed everything, given the protective order's limited scope, but the intervenors have forfeited such an argument by not raising it.)

The district judge asked plaintiffs why they had filed, but not relied on or even cited, documents that had been produced in discovery under the protective order. Plaintiffs did not offer an explanation. The judge then elected to ignore the uncited documents, announcing that he would "not consult them in making [his] rulings". *City of Greenville v. Syngenta Crop Protection, Inc.*, 2011 U.S. Dist. LEXIS 79755 at *6–7 (S.D. Ill. July 21, 2011). See *Northwestern National Insurance Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994). Having decided

not to read these documents, the judge observed that they could not have affected his decision and held that they need not be disclosed to the public, because they "can shed no light on the functioning of the Court and the basis for its decisions". 2011 U.S. Dist. LEXIS 79755 at *6. Contending that this approach undermines the presumption of public access to judicial records, intervenors want us to order the uncited documents unsealed.

Discovery material can be shielded from the public eye. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Once filed with the court, however, "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view … unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). This transparency "enable[s] interested members of the public … to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties." *Goesel v. Boley International (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (chambers opinion) (collecting citations). In short, litigants who enjoy publicly subsidized dispute resolution should expect public oversight. See *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

Tension between secrecy of discovery and disclosure of the record is inevitable; parties are tempted to use the latter to undermine the former. To resolve this tension, we have limited the presumption of public access to materials that affect judicial decisions. District court judges need not release every document that has "crept into the record". *Goesel*, 738 F.3d at 833. That would eviscerate *Seattle Times*. Requiring judges to vet *every* document in the record to determine whether it is covered by a privilege or some other basis of

confidentiality would needlessly increase the district courts' workload. The increased risk of releasing commercially valuable information to the public also would induce litigants to resist disclosure in the first instance.

Nevertheless, the intervenors ask us to extend the presumption of public disclosure to every non-privileged document that reaches a courthouse. For support, they point to dicta from *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009), suggesting that once documents are filed they "have been 'used in [a court] proceeding,' Fed. R. Civ. P. 5(d), and consequently the possibility exists that they could influence or underpin the judicial decision". *Id.* at 1075. Rule 5(d) permits a document to be filed only once it has been "used" in the proceeding. Building on this, *Bond* entertained the possibility that the fact of filing might allow us to *presume* the judicial reliance necessary to the presumption of public access. See also *id.* at 1073 ("[T]he public has a presumptive right to access discovery materials that are filed with the court [or] used in a judicial proceeding"). But *Bond* did not have occasion to adopt this analysis. The case involved materials that had never been filed; accordingly we held that the intervenor-appellee was not entitled to their disclosure.

*Bond*'s dicta must be measured against our repeated statements that the presumption of public access turns on what the judge did, not on what the parties filed. The documents that our intervenors seek were not reviewed and deemed irrelevant, a step that could reveal something valuable about the judicial process; instead the district judge explicitly declined to *consider* them after plaintiffs failed to offer a justification for their filing. Perhaps Rule 5(d) allows "use" to be inferred from filing when the district judge is si-

lent, but filing is not invariably enough under the standard enunciated in *Union Oil* and *Specht*. Public access depends on whether a document "influenc[ed] or underpin[ned] the judicial decision". *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002). The fact of filing *may* support an inference of influence. (It suggests at least that the document was at the judge's fingertips.) But not always, or *Seattle Times*' protection of discovery materials would be toothless. And certainly not here, where plaintiffs could not (or would not) explain why they had filed the documents, and the judge did not even look at them. The public has no right to access these documents, which cannot conceivably aid the understanding of judicial decisionmaking.

That we need to address this question at all reflects a shortcoming in the federal judiciary's docket-tracking software, rather than some legal snarl. As the district judge recognized, trial courts usually remedy errant filing by striking the unnecessary material from the record. The judge thought, however, that he could not strike the uncited exhibits in this case because plaintiffs had incorporated them into a much larger document that they filed using the court's e-filing system. The judiciary's software does not provide a means to erase subparts from a consolidated filing. Since the uncited documents that intervenors seek were intermingled with hundreds of other exhibits, the district court thought it too difficult to cull the docket. Yet although it may be hard, even impossible, to delete a document from the docket-tracking system, it remains possible to strike it from the record; that requires only a judicial order. Whether a copy of the file remains on a hard drive is irrelevant to the principles justifying public access to judicial records. We hope that in the future district judges will not assume that limitations of

docket-tracking software curtail their authority over the contents of the record. Software must reflect the judge's decisions; it does not control them. This court regularly returns, unfiled, irrelevant documents needlessly tendered; that process makes it unnecessary to decide whether a seal that was entered under *Seattle Times* should be removed. District judges have the same power.

We recognize that policing the boundaries of public oversight adds to the labor of trial judges. To ease the burden, the district courts have at their disposal the procedures of Fed. R. Civ. P. 53 and 28 U.S.C. §636(b)(2), which permit the appointment of special masters to sort through swollen filings and identify material that does not belong in the record. The district judge in this case appropriately referred to a magistrate judge the question whether some documents, properly in the record, are legitimately confidential. (The judge did not refer the uncited documents at issue in this appeal.) Appointment of a special master allocates the cost of remediation to the party that tried to undermine *Seattle Times* by filing documents irrelevant to the issues in the suit.

AFFIRMED