**CONDITIONALLY GRANT; Opinion Filed August 15, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01436-CV

### IN RE PATRICK DAUGHERTY, Relator

**Original Proceeding from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 17-10477**

## OPINION

Before Justices Bridges, Fillmore, and Schenck
Opinion by Justice Schenck

In this mandamus proceeding, relator Patrick Daugherty seeks relief from the trial court's

December 13, 2017 discovery order (the "Order") in this case. After reviewing the parties' briefs

and the mandamus record, we have determined Daugherty is entitled to relief from the Order. We

therefore conditionally grant the writ.

### BACKGROUND

Daugherty resigned from his employment with real party in interest Highland Capital

Management, L.P. ("Highland") in 2011. Highland brought suit against Daugherty in the 68th

Judicial District Court of Dallas County ("Daugherty Lawsuit") and obtained a jury verdict against

him for breaches of contract and fiduciary duty and a permanent injunction barring him from using

or disseminating Highland's confidential information. Since that time, Highland has brought

additional actions against Daugherty for alleged violations of the permanent injunction by

communicating with Joshua Terry, another former Highland employee. *See In re Daugherty*, No.

05-18-00290-CV, 2018 WL 3031658, at *1 (Tex. App.—Dallas June 19, 2018, orig. proceeding) (mem. op.); *In re Daugherty*, No. 05-17-01129-CV, 2018 WL 3031705, at *1 (Tex. App.—Dallas June 19, 2018, orig. proceeding) (mem. op.). Daugherty filed a separate suit in Delaware against one of Highland's affiliates ("Delaware Lawsuit"). Daugherty also initiated a miscellaneous action ("Miscellaneous Action") seeking recordings that Terry had made while employed with Highland. That case was assigned to the 191st Judicial District Court of Dallas County, and on September 5, 2017, Daugherty issued a subpoena duces tecum directed to Terry, which commanded production of the recordings by 10 a.m. on September 22, 2017.

On September 21, 2017, Highland filed an emergency motion for entry of protective order and request to transfer the Miscellaneous Action to the 68th Judicial District Court. Later that day, Daugherty's attorneys received ninety minutes' notice that the respondent, the presiding judge of the 68th Judicial District Court, wished to conduct a telephonic hearing on Highland's emergency motion with counsel for Daugherty, Highland, and Terry. The court's coordinator did not know if the court's official reporter would be available to transcribe the hearing, so Daugherty's attorneys engaged an independent court reporter, Wendy Schreiber, to transcribe the hearing from their offices. Unbeknownst to Daugherty's attorneys, Schreiber's stenographic program made an audio recording of the hearing and began recording several minutes before the hearing began. At various times during the call, Daugherty's attorneys muted their telephone and conducted discussions amongst themselves, portions of which may have been captured by Schreiber's recording device or overheard by her. Near the end of the call, it was revealed that Daugherty's attorneys had engaged a court reporter to transcribe the telephonic hearing. The judge did not make a ruling during that call and ordered the parties to appear before him at a later date to argue the merits of Highland's transfer request. When counsel for Daugherty asked the judge to clarify whether he

was ordering Daugherty to appear at a subsequent hearing, the judge then ordered the parties to appear before him the next day.

Highland obtained a copy of the certified transcript from Veritext, Schreiber's employer, and requested a copy of the entire audio recording made in connection with the telephonic hearing to check the accuracy of the transcript. Highland issued subpoenas to Schreiber and Veritext to respond to written questions regarding the hearing and to produce the audio recordings and notes made of the hearing and all communications related to the Miscellaneous Action. Daugherty filed a motion to quash and a motion for protective order in response to Highland's subpoenas, urging that the audio recording of the hearing contained conversations among Daugherty's attorneys before, during, and after the call that constitute their core work product and, in any event, are irrelevant to either the Delaware Lawsuit or the Miscellaneous Action. Highland filed a combined response to Daugherty's motion to quash, motion to compel Veritext to comply with its subpoena, and motion for sanctions against Daugherty's attorneys.

The trial court conducted a hearing on Daugherty's motion to quash at which Schreiber appeared and answered the judge's questions, but did not do so under oath. At that hearing, Schreiber did not confirm that the audio recording captured any particular statements unheard by the trial judge or opposing counsel, but indicated that her recording device was recording before the call began and throughout the call, leaving the possibility that the audio recording would reflect statements not heard (or intended to be heard) by the court or opposing counsel. She also indicated that she may have overheard statements among Daugherty's counsel, but she did not pay attention to them. At the conclusion of the hearing, the judge ordered that Schreiber and Veritext produce the portion of the audio recording "from the moment that the . . . other side basically gets on the phone to the moment they get off." The judge later signed the Order, denying Daugherty's motion to quash, granting in part Highland's motion to compel, and ordering production of the audio

recording. Daugherty filed this petition for writ of mandamus urging this Court to stay the Order and issue a writ of mandamus directing the trial court to vacate the Order.

## AVAILABILITY OF MANDAMUS REVIEW

To obtain mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that the relator has no adequate appellate remedy. *In re Prudential Ins. Co*., 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. *In re Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840).

## DISCUSSION

The audio recording evidently contains statements made while Schreiber was in the room with Daugherty's counsel and may contain statements that were not heard by opposing counsel or the trial court judge and were not included in the certified transcript ("unheard statements").

Highland's arguments in its response to Daugherty's motion to quash/for protective order urge the production of the audio recording on two broad bases: (1) to verify the accuracy of the certified transcript and (2) to obtain relevant information not subject to any privilege either as a necessary augmentation to the official record of the hearing or as a general discovery matter. As to Highland's claim it needs to verify the accuracy of the certified transcript of the hearing, it has failed to allege any relevant inaccuracy with respect to the recounting of the exchange between counsel and the court or to otherwise establish circumstances justifying compelling the production of any audio recording that may exist. *See In re Todd*, Nos. 12-15-00412-CV & 12-15-00413-CV, 2015 WL 4249799, at *3 (Tex. App.—Houston [14th Dist.] July 14, 2015, orig. proceeding) (mem. op. per curiam); *see also In re Pratt*, 511 F.3d 483, 485 (5th Cir. 2007). Indeed, the crux of Highland's argument is that it is entitled to access to the audio recording to the extent it reflects

–4–

statements that were not heard at the hearing, posing the legal question of whether statements that are not heard or intended to be heard are nevertheless part of the "hearing" or subject to discovery on account of their being overheard by a court reporter or captured by her recording device.

Before considering Highland's second argument for production, we must determine whether the "unheard statements" on the audio recording are or should be part of the trial court's record of the hearing. Unsurprisingly, there is sparse authority directly addressing this question.

We begin with the acknowledgement that the common law has long presumed a right of public access to inspect and copy all judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). While *Nixon's* rule is broadly accepted and followed among state courts, including our own, *see* TEX. R. CIV. P. 76a, fewer courts have addressed the antecedent question of how a document becomes a judicial record in the first instance. The Seventh Circuit, for example, has consistently held that a document becomes a judicial document and thus becomes part of the public record only when it is filed under circumstances where a court might use it in determining litigants' substantive rights. *City of Greenville, Ill.* v. *Syngenta Crop Prot., LLC*, 764 F.3d 695, 697–98 (7th Cir. 2014) (limiting presumption of public access to materials that affect judicial decisions). A document that is simply filed with the clerk, for example, in hopes of converting it into an embarrassing and publicly available record, but that does not or cannot form any potential part of the judge's reasoning, is not a judicial document. *See id.*[1] Our rules similarly limit what parties are expected to file with the court at the outset and defines court records as documents filed "in connection with" a "matter" that is actually before the court for decision.[2] TEX. R. CIV. P. 76a. Broad as it is, that definition still functions to limit the record in important

---

[1] *See also In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 n.7 (7th Cir. 1980) (noting that in the context of pretrial discovery, "unless and until introduced into evidence, the raw fruits of discovery are not in the possession of a court" and thus are not judicial documents).

[2] As between the parties, discovery materials are only to be filed if they pertain to motions and responses to motions before the court or agreements concerning discovery matters. *See* TEX. R. CIV. P. 191.4.

ways. Thus, one would expect, that under our rule, no less than its federal counterpart, the act of simply passing a paper to a district court with the intention that it be stamped and filed among the papers in a particular cause number would not, by and in itself, render it publicly available in perpetuity. It is only where the filing would have some conceivable bearing—or be "connected with"—the pending "matter" such that it might actually be considered that the rationale of *Nixon* is triggered.

Similarly, the purpose of the reporter's record is to preserve the basis for the judge's decisions. *See* TEX. R. APP. P. 34.6(f); *King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 733–34 (Tex. App.—Dallas 2006, no pet.). Audiotapes that back up the court reporter's stenographic record are not judicial records, and thus parties have no right to access them, unless some reason is shown to distrust the accuracy of the completed stenographic transcript. *See Ex parte Hollowell*, 392 S.W.3d 661, 662 (Tex. Crim. App. 2013) (Johnson, J., concurring) (emphasizing that stenographic reporter's backup audio recording of proceedings is not part of official reporter's record).

Here, regardless of whether Daugherty's counsel's off-the-record statements were heard by Schreiber or were captured by the audio recording, they were not intended to be heard by the trial judge or opposing counsel and, more importantly, were not heard by either. In fact, Daugherty's counsel intentionally muted the call to prevent the trial judge and opposing counsel from hearing the statements. Given that the statements made before the hearing and while the call was muted were not heard by the judge, they could not possibly serve as the basis for any decisions he made. Accordingly, they are not, and should not be, considered part of the official record of the hearing.

The only inaccuracies with respect to the certified transcript that Highland has alluded to, although not specifically identified, are that Schreiber may have misidentified one or more of the

speakers during the telephonic hearing. The record does not reflect—nor do the parties argue—that Highland identified any specific examples of disputed identities in the transcript to the trial judge for his resolution.[3] Further, neither the record of the hearing nor the trial court's order indicates that the trial judge's decision to order the production of the audio backup tape was based on a dispute over the identification in the transcript of the persons speaking. Instead, Highland's complaint, and the relief at issue here, is directed to whether it is entitled to the audio recording in order to hear, for the first time, utterances that were not made to counsel or the court.

Thus, we conclude the court reporter's audio backup tape was not, and should not be, considered part of the record. We now turn to whether the audio backup tape is discoverable.

The rules of civil procedure define the general scope of discovery to include nonprivileged matter that is relevant to the subject matter of the action. TEX. R. CIV. P. 192.3(a). The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

"The presiding judge may not testify as a witness at the trial. A party need not object to a presiding judge testifying to preserve the issue." TEX. R. EVID. 605. Rule 605 is identical to its federal counterpart. *See* FED. R. EVID. 605. The few reported federal or state cases involving Rule 605 violations hold that a judge testifying as a witness violates due process rights by creating a constitutionally intolerable appearance of partiality. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 248 (Tex. 1999).

Similarly, a privately retained court reporter, like Schreiber, while not the official court reporter assigned to the trial court, is certified by the supreme court to provide an important

---

[3] Neither party has cited to us any authority that requires production of an audio backup tape to clarify which attorney was speaking. In addition, Highland has not established such a clarification would have had any impact on any ruling by the trial court on its motion for emergency protective order and request to transfer. Moreover, any inaccuracy with respect to the identification of the speaking counsel should be considered and settled separately by the trial court who conducted the hearing and presumably knew who was addressing the court. *See* TEX. R. APP. P. 34.6(e) (providing that inaccuracies in appellate record may be corrected by trial court).

function.  *See* TEX. GOV'T CODE ANN. §§ 52.041, 154.101(b).[4]  She is not just a bystander, but is an integral part of the judicial process,[5] recording a proceeding involving the parties and the judge.  *See Halsey* v. *Dallas Cty.*, 68 S.W.3d 81, 85 (Tex. App.—Dallas 2001), *rev'd on other grounds* 87 S.W.3d 552 (Tex. 2002).   As such, a court reporter in fulfilling his or her duties should be afforded the same protections from inquiry that a juror whose deliberations—outside of suspicion of corrupting outside influence—are afforded, or the protections afforded a law clerk who discusses the bases of a trial judge's decisions with him.  *See*, *e.g.*, TEX. R. CIV. P. 327(b), TEX. R. EVID. 606(b) (prohibiting juror testimony as to any matter regarding deliberations, except as to whether any outside influence was improperly brought)[6]; *Kennedy v. Great Atl. & Pac. Tea Co., In.*, 551 F.2d 593, 594–95 (5th Cir. 1977) (reversible error to permit law clerk to testify about communications with trial judge which led law clerk "in the interest of promoting a settlement" to advise plaintiffs on issue of fault in case); *Terrazas v. Slagle*, 142 F.R.D. 136, 140 (W.D. Tex. 1992) (granting motion to quash subpoenas served on law clerks to determine whether trial court judge had been improperly influenced by third party).  Court reporters are an integral component of the judicial process and will, by necessity, frequently be present during proceedings under circumstances that will result in their overhearing statements from lawyers and judges alike.  Subjecting court reporters to the discovery process on this account would inexorably invade the

---

[4] Although Schreiber is not the official court reporter, she is nevertheless subject to the same licensing and regulatory regime as an official court reporter and functions as an arm of the judicial process in the same manner.  *Id.* § 154.101(b).  And, of course, any rule that would make her inadvertent recordings part of the official record, despite being captured before or after the actual hearing, or during breaks, would apply with equal force to statements captured by the appointed official or deputy reporter, including statements by the judge himself that were not intended for counsel's hearing or to be preserved for posterity.

[5] Like the judge, the court reporter serves in a role critical to the judicial proceedings, although performing a ministerial rather than discretionary function.  *See Dallas Cty. v. Halsey*, 87 S.W.3d 552, 556 (Tex. 2002).

[6] While jurors are obliged to follow the court's instructions in conducting their deliberations, testimony from jurors offered to prove a breach of those obligations is inadmissible unless it relates to an external influence.  *Clancy v. Zale Corp.*, 705 S.W.2d 820, 829 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).  Routine examination of jurors might well produce relevant or interesting disclosures about their deliberations and fidelity to the charge, but would almost certainly create more mischief than good.  Likewise, allowing parties to depose court reporters or court staff about what they might have heard the judge or the lawyers say about one another before and after a hearing, or during breaks, would inject needless harm and controversy into an already stressful environment.

judicial process. *See* Tex. R. Civ. P. 327(b), Tex. R. Evid. 606(b); *Kennedy*, 551 F.2d at 594–95; *Terrazas*, 142 F.R.D. at 140.

Moreover, generally speaking, ordering a court reporter to produce the audio backup tape may cause the reporter to violate his or her professional ethics because the audio backup tape may contain inadvertent comments, off-the-record discussions, or attorney-client privileged communications that should not be released or disclosed. *See* An Attorney Requests a Copy of a Reporter's Backup Audio Media, NCRA COPE – Op. (2014) (cautioning court reporters that complying with order to produce audio backup tapes may violate National Court Reporters Association's code of professional ethics, which requires reporter to preserve confidentiality and ensure security of information entrusted to reporter).

Under the circumstances presented here, we conclude the court reporter's audio recording is not discoverable.[7] Thus, we need not address any of the parties' arguments regarding whether the information contained on the audio recording is relevant or subject to any privilege.

Having determined that the audio recording is not discoverable, and thus that the trial court abused its discretion by ordering Schreiber's audio backup tape to be produced, we must now determine whether Daugherty has an adequate appellate remedy. The Texas Supreme Court has repeatedly held that appeal is inadequate when a trial court erroneously orders the production of confidential information or privileged documents, *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006), which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege, or trade secrets without adequate protections to maintain the confidentiality of the information. *See Walker*, 827 S.W.2d at 843. Likewise, ordering the production of a court reporter's audio backup tape in this case invades the judicial process,

---

[7] We note the result might have been different had Schreiber not been a licensed court reporter, but, as that circumstance is not before us, we need not consider it.

similarly materially affecting the due process rights of the parties. Accordingly, we conclude appeal is inadequate here.

## CONCLUSION

We conclude the trial court abused its discretion by granting Highland's December 5, 2017 motion to compel and denying Daugherty's motion to quash and motion for protective order. We further conclude Daugherty has no adequate remedy on appeal. Accordingly, we conditionally grant the writ of mandamus. We direct the trial court to vacate its December 13, 2017 order granting Highland's motion to compel and denying Daugherty's motion to quash. Because we assume the trial court will comply with this opinion, we direct our clerk not to issue the writ of mandamus unless information is received that the district court has not so complied. We lift the stay issued by this Court on December 15, 2017.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

171436F.P05